No. 26,676.

THE STATE OF KANSAS, *Appellee,* v. FOREST W. WINTERS, *Appellant.*

SYLLABUS BY THE COURT.

1. WITNESSES — *Privileges of Accused — Discretion of Court After Waiver.* When one charged with crime becomes a witness, the extent to which he may be cross-examined as to his past life and conduct for the purpose of affecting his credibility as a witness rests largely in the sound discretion of the trial court.

2. CRIMINAL LAW—*Instructions—Alibi.* Upon the trial of one charged with the larceny of an automobile found in his possession soon after the larceny and some distance from the place of the theft, where the defense included an alibi, it was proper for the court to instruct the jury that they might find defendant guilty if they found he stole the automobile or aided and abetted in its theft.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed January 9, 1926. Affirmed.

*E. C. Wilcox* and *J. Howard Wilcox,* both of Anthony, for the appellant.

*Charles B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, and *R. H. Beebe,* county attorney, for the appellee.

Larceny, 36 C. J. p. 937 n. 48. Witnesses, 40 Cyc. p. 2510 n. 30; 6 A. L. R. 1608; 25 A. L. R. 339; 28 R. C. L. 599.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from a conviction of the larceny of an automobile, the property of Albert B. Moore. The state's evidence, in effect, was that on the afternoon of July 31, 1923, Mr. Moore and his wife drove their Ford touring car from Oklahoma into Anthony, Kan., stopped at a filling station and had the car filled with oil, gas and water, and parked it on the street in front of a restaurant about seven-thirty in the evening and went into the restaurant for dinner. They went to get the car in about thirty minutes and found it was gone. Among other things, the car had in it a traveling bag, in which was a suit of clothes, in the pocket of which was Mr. Moore's name. Also in the car was a "For Hire" sign. The car was a late model, had been used about ten months, and was worth about $400. About four-thirty in the afternoon of August 1 defendant drove this car into the town of Depew, Okla., and parked it in or near an alley. Depew is about 200 miles from Anthony, Kan. On the street in Depew defendant met the city marshal and another officer. Something about his conduct caused the officers to suspect him and they determined to keep some watch of his movements. About six o'clock defendant and a young man by the name of Carlysle, who was clerking in a hardware store at Depew, came out of the store, got into the Ford touring car and started to drive out of town. The officers got into another automobile and followed them. After driving some distance into the country defendant and his companion turned into a farm house. The officers drove by some distance and turned around. In a few minutes defendant and his companion drove out on to the road and started toward town, and the officers followed them. Observing that he was being followed, defendant speeded up his car, and the officers did likewise. Defendant drove rapidly into and through town, but in slowing down to turn one of the corners Carlysle jumped out. Defendant started to drive out of town by another road, but this road crossed a stream near the edge of town where there was a bridge, and at that time some wagons heavily loaded with oil drilling material were crossing the bridge, which forced defendant to slow down and wait. Fearing he would be overtaken by the officers, defendant abandoned the automobile and ran off through the weeds and timber along the stream. The officers took the automobile back to a garage.

Defendant did not go back to the car or make any effort to claim it. Moore had his car insured, notified the insurance company, and through it the car was located. When taken by the officers the "For Hire" sign which was in the car when it was stolen was still in the car. Also Mr. Moore's suit of clothes was in the car in a traveling bag which did not belong to him. The license number had been removed and it bore a Kansas dealer's license tag. There is no controversy in this case about the car which defendant drove into Depew being Moore's car which was stolen from Anthony the evening before.

The defense included an alibi. Defendant testified in his own behalf that he worked in the oil fields, his occupation being a tool dresser; that in July, 1923, he was working in or about Webb City, Okla.; that his father came from Nebraska to Enid on business, and from there to Webb City to see defendant, who at that time was at Stillwater; that his father and two women with whom they were acquainted drove from Webb City over to Stillwater to see him; that they visited there in the afternoon and stayed all night at Stillwater; that while eating breakfast the next morning at a restaurant a Mr. Haskins, whom he knew, came to him and told him that he had a car he wanted taken to Depew, and arranged with defendant to take it, paying him $5, and that he left Stillwater about eight o'clock in the morning and drove to Depew, getting in there some time in the afternoon; that he was acquainted with Carlysle and visited him in the hardware store; that Carlysle told him if he would "stick around" until he got through work that evening he knew where they could get some whisky; that he did stay around until six o'clock, when he and Carlyle got into the car and drove out to a place Carlysle knew in the country, where they got a half gallon of whisky; that he noticed the officers following him, especially on the trip back from the country, and supposed they were after him because he had whisky, and that he drove fast to get to town, where he slowed up and let Carlysle out, and started to drive away, when he was blocked by the teams with their loads on the bridge; that he threw the jug containing the whisky out into the weeds near the road and stopped the car and ran out into the timber. He denied ever being at Anthony and contended that he was at Stillwater the day the car was taken, and in the afternoon and evening was in the company of his father and their friends. To this extent his testimony was corroborated by his father and the two women.

State v. Winters.

Several points are relied upon for reversal. When defendant was on the witness stand he testified, on cross-examination, that he had not been convicted of any crime, but that he had plead guilty to a charge of arson at Medford, Okla. He was then asked if he had ever been arrested and charged with theft, and over his objection he was required to answer, and did answer, that he had been once arrested at Ardmore. The point is made that since an arrest is only a charge of an offense, as distinct from proof of it as a conviction would be, the question was unfair and prejudicial to the defendant.

While there is some conflict in the authorities (see note 6 A. L. R. 1608 *et seq.*), this court has taken the view that when the accused in a criminal case becomes a witness in his own behalf the extent to which he may be cross-examined regarding his previous life and conduct for the purpose of affecting his credibility as a witness, is a matter which rests largely within the sound discretion of the trial court. (*State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406; *State v. Greenburg*, 59 Kan. 404, 53 Pac. 61; *State v. Roselli*, 109 Kan. 33, 198 Pac. 195.) When the reasonable limits of this rule are recognized by counsel and properly adhered to by the trial courts, it is much to be preferred to either an unlimited inquiry on the one hand, or a prohibited inquiry on the other. (2 Wigmore on Evidence, 2d ed. 367-375.) The better rule is that the fact that an unproved charge has been made against one does not tend logically to prove guilt of an offense or to affect the credibility of his testimony. (*Souza v. United States*, 5 Fed. [2d] 9.) Hence, ordinarily a question of that kind should not be asked; but when it is asked and the answer discloses that the charge had not been established, as in this case, the inquiry is not detrimental to the witness, and the case should not be reversed because of it.

Complaint is made of the questions asked defendant's father on cross-examination when he was a witness. The father had testified that he had gone from Nebraska, where he was working, to Enid, Okla., and from there to Webb City to see defendant, and on learning he was at Stillwater that day, he and friends drove over to Stillwater. On cross-examination he was asked what business he had at Enid which caused him to go there from Nebraska. Objection was made, but he was required to answer and stated that he made the trip to be present at the trial of another son who was charged with an offense. It seems clear from the record that these questions were propounded only for the purpose of testing the credi-

bility of the witness, and since there was no attempt to connect this defendant with any charge against his brother then pending at Enid, it could not be prejudicial in this case.

Appellant contends that it was the duty of the trial court to give a definition of grand larceny, and calls our attention to R. S. 21-544, which makes it a misdemeanor for a person to take, carry away and use any automobile with intent to deprive the owner of the use thereof against his will, but not with the intent of stealing or converting the same permanently to his own use. The information in this case was drawn under R. S. 21-533, and specifically charges that the defendant "did unlawfully and feloniously steal, take and carry away one Ford touring automobile," etc. There is no suggestion from the record that during the trial there was any contention on behalf of the defendant that the automobile was taken with the intention of depriving the owner of its use only temporarily and not permanently. The court did instruct the jury that the defendant could not be found guilty unless they should find, among other things, that he "did unlawfully and feloniously steal, take and carry away" the touring car in question. The word "steal" has such a general and well-defined meaning, we think the jury could not have been misled by the instruction because there was no further definition of what constituted grand larceny.

The court gave the following instruction:

"Under the laws of this state it is provided that any person who counsels, aids of abets another in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. So in this case if you find and believe from the evidence that the defendant did not commit the offense charged in the information, but that the actual commission of said offense was by another, and that the defendant counseled, aided or abetted such other person in the commission of such offense, then you would be warranted in finding the defendant guilty of said offense the same as if he were a principal in the commission of such offense."

Appellant complains of this instruction, and says that there was no evidence in this case to justify giving it, that the state's contention is that the defendant stole this car, and that there was no evidence tending to show that someone else stole it and that this defendant aided and abetted such person in the commission of the offense. There is this much in the evidence: No witness saw the defendant at Anthony at the time the car was taken. He did have it at Depew, Okla., the next afternoon, and admits that he drove it, from Stillwater to Depew the morning after it was stolen. His pos-

State v. Winters.

session of the car so soon after it was stolen, if unexplained, was alone sufficient to authorize the jury to find that the defendant stole the car. Defendant's evidence tended to show that he was in Stillwater the afternoon and evening of July 31, which would indicate that he did not actually steal the car. This leads to the conclusion either that he aided and abetted in the theft of the car, or, not knowing of the theft and being entirely innocent thereof, he in some legitimate way got possession of the car after it was stolen. In other words, his possession of the car so soon after it was stolen, unexplained, is just as much evidence that he aided and abetted in its larceny as it is that he actually stole it. If his possession of it was not explained sufficiently to cause the jury to have a reasonable doubt as to whether he stole the car, or aided and abetted in its theft, the jury were justified in returning a verdict of guilty. Defendant explained how he happened to be in possession of the car and to drive it to Depew, but it seems clear that the jury did not believe this explanation, and of course they were not required to believe it if, under all the facts and circumstances of the case, they thought it was not true.

Appellant complains of the instructions of the court upon circumstantial evidence and as to the time when the offense was committed. These same objections were made to instructions identical with those here given in the case of the *State v. Boswell,* 119 Kan. 670, 240 Pac. 848, recently decided adverse to the contentions of appellant.

Finding no material error in the case, the judgment of the court below is affirmed.