STATE v. WADE AYCOTH AND JOHN SHADRICK.

(Filed 22 November, 1967.)

**1. Attorney and Client § 5—**

The professional obligation of court-appointed counsel to his client and to the court is no less than that of privately retained counsel, and the failure of such counsel to comply with the Rules of the Supreme Court subjects him to removal and censure.

**2. Criminal Law §§ 154, 156—**

Defendant's case on appeal, although not served upon the State within the prescribed time nor docketed in the Supreme Court at the appropriate Term, is treated as a petition for *certiorari* in this case and decided on its merits as in the case of an authorized belated appeal, notwithstanding the failure of the defendant's court-appointed attorney to explain the delay, since it appears from the case that the defendant is entitled to relief.

**3. Criminal Law § 9—**

All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty.

**4. Same—**

The mere presence of a person at the scene of a crime at the time of its commission does not make him a principal in the second degree, even though he makes no effort to prevent the crime, or even though he may silently approve, or even secretly intend to assist the perpetrator in case his aid becomes necessary, it being necessary to constitute him a principal in the second degree that he give active encouragement to the perpetrator by word or deed or make it known to the perpetrator in some way that he would lend assistance if it should become necessary.

**5. Same; Robbery § 4—**

Evidence of the State tending to show that the defendant remained seated on the right, or passenger, side of an automobile while the driver went inside a store and, armed with a pistol, demanded and received approximately $100 in cash from an employee, *is held* insufficient to be submitted to the jury on the issue of defendant's guilt as an aider and abettor in the commission of an armed robbery, there being no evidence that defendant moved from his position in the car, that he could observe what was taking place in the store, or that he shared in the proceeds of the robbery.

PLESS, J., dissenting.

APPEAL by defendant Shadrick from *McLaughlin, J.,* October 31, 1966 Session of UNION.

Criminal prosecution on a bill of indictment charging Wade Aycoth and John Shadrick with the armed robbery, as defined in G.S. 14-87, of Mrs. Keith Stevenson.

Evidence offered by the State tends to show: The place of business known as Outen's Grocery, located near a crossroads in Union County, consists of a grocery store and service station. The grocery store, where meats, groceries and drinks are sold, is in a one-story building. The service station consists of two gasoline pumps located twenty-four feet from the entrance to the store. Mrs. Stevenson, an employee, was in charge of Outen's Grocery on October 25, 1966, about 1:15 p.m., when a car operated by Aycoth drove up and stopped between the gasoline pumps and the store. Shadrick, a passenger, was on the right front seat. Aycoth got out of the car, told Mrs. Stevenson "to fill it up with gas," started into the store and then came back and told her "to put in $2.00 worth of gas." Mrs. Stevenson "put the gas in and went into the store, with Aycoth following (her)." Inside the store, Aycoth, armed with a pistol, demanded and received the money in the cash register, approximately one hundred dollars. As he backed out of the store, with the pistol pointed towards Mrs. Stevenson, Aycoth threatened to kill her if she followed him. Thereafter, he got into the car and drove away. Aycoth and Shadrick were together when arrested in Union County about 9:00 p.m. the same day.

Evidence offered by Shadrick, consisting of his own testimony, tends to show that he and Aycoth got together in Mecklenburg County about 3:00 p.m. and did not leave for Union County until 8:00 p.m. Aycoth did not testify or offer evidence.

Each defendant was represented by separate court-appointed counsel; Aycoth by R. Roy Hawfield, Esq., and Shadrick by Robert Huffman, Esq.

As to each defendant, the jury returned a verdict of "guilty of armed robbery."

As to Shadrick, the court pronounced judgment imposing a prison sentence of "not less than 15 years nor more than 20 years."

Shadrick excepted and appealed. An (undated) order entered by Judge McLaughlin permitted Shadrick to appeal *in forma pauperis* and provided that Union County pay for the transcript and other documents incident to his appeal.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*Robert L. Huffman for defendant appellant.*

BOBBITT, J. Aycoth and Shadrick were indicted jointly and tried together at October 31, 1966 Session of Union Superior Court. Aycoth's appeal, in compliance with Rule 5, Rules of Practice in the Supreme Court, 254 N.C. 783, 786-787, was docketed and heard at

our Spring Term 1967. On such appeal, this Court, while holding "(t)here was plenary evidence to withstand Aycoth's motion for judgment as in case of nonsuit and to support the verdict," awarded Aycoth a new trial on account of the prejudicial incident discussed in the opinion. See *State v. Aycoth,* 270 N.C. 270, 154 S.E. 2d 59.

By order dated November 7, 1966, Shadrick was "allowed 90 days in which to make up and serve case on appeal" and the State was allowed thirty days thereafter to file exceptions or prepare and serve counter-case. The record shows the solicitor accepted service of Shadrick's case on appeal in these words: "SERVICE of defendant's foregoing Case on Appeal accepted, *in apt time,* this 21 day of April, 1967." (Our italics.) Under our Rule 5, Shadrick's appeal should have been, but was not, docketed for hearing at our Spring Term 1967. There should have been a single record relating to the appeals of both Aycoth and Shadrick. Separate appeals and records involve additional costs which, on account of the indigency of the appellants, must be paid by Union County.

The professional obligation of court-appointed counsel to his client and to the court is certainly no less than that of privately retained counsel. Competence and diligence are expected and required. Court-appointed counsel are subject to removal and censure unless they comply with the requirements of our rules.

The record before us contains no explanation as to why Shadrick's case on appeal was not served within the prescribed time or as to why his appeal was not docketed at the Spring Term 1967 of this Court. We do not rule out the possibility that a reasonable explanation may exist for what appears to be an inexcusable delay in bringing forward Shadrick's appeal. However, we must consider an appeal on the record before us; and if such reasonable explanation exists it should have been set forth in the case on appeal so that this Court could pass upon the legal sufficiency thereof. Obviously, Shadrick's appeal is subject to dismissal for noncompliance with our rule. However, absent a motion by the State that Shadrick's appeal be dismissed, and in view of our own conclusion that Shadrick is entitled to relief, we have elected to treat Shadrick's appeal as a petition for *certiorari* and to allow it and decide the case on its merits as in case of an authorized belated appeal.

The State does not contend that Shadrick actively participated in the alleged armed robbery. The question is whether there is sufficient evidence to require submission to the jury and to support a verdict with reference to Shadrick's guilt as an aider and abettor of Aycoth in the commission of the alleged armed robbery.

Decision turns on the application of these legal principles:

"The mere presence of a person at the scene of a crime at the

time of its commission does not make him a principal in the second degree; and this is so even though he makes no effort to prevent the crime, or even though he may silently approve of the crime, or even though he may secretly intend to assist the perpetrator in the commission of the crime in case his aid becomes necessary to its consummation. (Citations.)" *State v. Birchfield,* 235 N.C. 410, 413, 70 S.E. 2d 5, 7.

"All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty. (Citations.) An aider and abettor is one who advises, counsels, procures, or encourages another to commit a crime. (Citations.) To render one who does not actually participate in the commission of a crime guilty of the offense committed, there must be some evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator of the crime or by his conduct made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary. (Citations.)" *State v. Ham,* 238 N.C. 94, 97, 76 S.E. 2d 346, 348; *State v. Burgess,* 245 N.C. 304, 309, 96 S.E. 2d 54, 58; *State v. Horner,* 248 N.C. 342, 350, 103 S.E. 2d 694, 700; *State v. Hargett,* 255 N.C. 412, 415, 121 S.E. 2d 589, 592; *State v. Gaines,* 260 N.C. 228, 231, 132 S.E. 2d 485, 487.

The evidence, when considered in the light most favorable to the State, tends to show: The robbery occurred inside the store. Aycoth was in the store "no more than two or three minutes." There is no evidence that Shadrick moved from where he was sitting on the right (passenger) side of the front seat of the car. He had no conversation with Mrs. Stevenson. There is no evidence that he had a weapon of any kind. Mrs. Stevenson testified she could see Shadrick and Shadrick could have seen her through the plate glass window but Shadrick "never did look around." There is no evidence that Shadrick could or did observe what was taking place inside the store. There is evidence that Aycoth concealed his pistol before he stepped out of the store. There is no evidence that Shadrick shared in the proceeds of the one hundred dollar robbery beyond the fact that Shadrick, when arrested, had about fifteen dollars and some change on him. There were weapons under the seat of the car when Aycoth and Shadrick were arrested. However, there is no evidence that Shadrick owned or controlled the car. An officer testified that Aycoth had stated that he was the owner of the car.

Although there are circumstances which point the finger of suspicion towards Shadrick, we are constrained to hold that the evidence is insufficient to warrant a verdict that he is guilty of the al-

leged armed robbery as an aider and abettor of Aycoth. Hence, the court below should have allowed defendant's motion at the conclusion of all the evidence for judgment as in case of nonsuit. For error in this respect, the judgment of the court below is reversed.

Reversed.

PLESS, J., dissenting: The driver of a get-away car plays an important part in a robbery, and he seldom commits any overt act to show his participation in, or knowledge of, the robbery. He merely sits in the car, usually with the motor running; but where he is an actual confederate his presence gives encouragement to the active perpetrators, which makes him responsible.

In *State v. Allison,* 200 N.C. 190, 156 S.E. 547, it is said:

> " 'Where the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as encouraging.' "

The evidence showed the association of Shadrick and Aycoth over a period of many hours on the day in question. This would be some indication of the friendship of the two men. A person's knowledge can seldom be shown except by circumstances, and I am of the opinion that the circumstances shown here are sufficient to import knowledge to Shadrick.

Shadrick rode to the scene of the robbery with Aycoth. The fact that he was sitting on the right front seat of the car is not, in my opinion, a controlling factor. He could easily change sides to the driver's seat when his confederate came back. The State's evidence was to the effect that Shadrick was in the same car later that night and was seen to get out from the left, or the driver's side. While the victim did not see Shadrick look toward the store, she testified he could have seen her while she was being robbed and that she saw him well enough that she could identify him. When the car was later searched, a loaded pistol was found under the left front seat and another was found under the right front seat. This fact plus his presence within eight feet of the store and his arrival and departure with the robber are, in my opinion, sufficient to submit the case to the jury. That is usually all that can be shown as to the get-away driver, and the jury has adopted the common-sense view that Shadrick didn't come along "just for the ride."

I am afraid the majority opinion describes a course of conduct for the drivers in these cases whereby they can be absolved of blame. I dissent.