No. 46,100

STATE OF KANSAS, *Appellee*, v. MICHAEL LYNN GOODMAN, *Appellant*.

(483 P. 2d 1040)

Opinion filed April 10, 1971.

*James D. Howell, Jr.,* of Overland Park, argued the cause, and *James V. Horn,* of Kansas City, Missouri, was with him on the brief for the appellant.

*Edward G. Collister, Jr.,* Assistant Attorney General, argued the cause, and *Kent Frizzell,* Attorney General, *James W. Bouska,* County Attorney, and *P. Stephen Martin,* Assistant County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action prior to the advent of the new rules of criminal procedure wherein the appellant was charged with second degree burglary and grand larceny (K. S. A. 21-520 and 21-524) as authorized by K. S. A. 62-1016, for counseling, aiding and abetting in the commission of such offenses. He was tried before a jury and found guilty. At the motion for a new trial the court set aside the appellant's conviction for possession of burglary tools for which he was also tried.

The appellant specifies as errors the sufficiency of the evidence to support the conviction, the refusal to admit deposition testimony, the quashing of notice and subpoena issued to take depositions, and instructions given to the jury.

Prior to the trial the parties entered into a signed written stipulation which was submitted to the jury as instruction No. 2. It reads:

"LADIES AND GENTLEMEN OF THE JURY, in the ordinary criminal proceeding there are necessarily two things that the plaintiff, State of Kansas, must prove. First, the State must prove that the crimes which they have charged were in fact committed. Secondly, the State must prove beyond a reasonable doubt that the defendant was the actual perpetrator of the crimes or that he counseled, aided or abetted those who were the principal perpetrators of the crimes.

"In this particular case, the defendant, Michael Lynn Goodman, and his attorneys, are admitting that the crimes charged did in fact take place. That is, the defendant admits that on or about the 16th day of February, 1969, in Johnson County, Kansas, certain parties did then and there unlawfully, willfully, feloniously and burglariously break into and enter, in the nighttime, the Perrin's Jewelry Shop, said shop being within a building owned by Mrs. W. D. Fleming, with intent to commit a larceny, and in which shop there was at the time valuable things kept and deposited, and they did then and there unlawfully, willfully and feloniously steal, take and carry away three sample cases of diamonds and other valuable gems worth and of the value of approximately $25,000 in United States money, and said property being the property of another, to-wit: Ed Cain and Company, and said value being in excess of $50, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas. Furthermore, the defendant and his attorneys admit that on the same date, certain parties did then and there unlawfully, willfully and feloniously have in their possession certain burglary instruments that are commonly used for breaking into stores, warehouses and dwelling houses, said burglary instruments consisting of the following: one number 10 sledge hammer, two screwdrivers, one hatchet, two pry bars, one pinch bar and one set of walkie-talkies, with an intent to employ said instruments in burglarious activity, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the State of Kansas. The crimes which you have just had described to you consist of second degree burglary, grand larceny and the felonious possession of burglary tools. These are three separate and distinct felony charges.

"Again, and to be perfectly clear, the defendant is conceding that those crimes did in fact take place. On the other hand, the defendant does not admit his participation in those crimes, and he has entered his plea of not guilty to said crimes. The practical effect of the defendant's stipulation that the crimes did in fact take place means that the plaintiff, State of Kansas, will not have to present evidence to you and the Court bearing on whether or not the crimes actually happened.

"Therefore, you are instructed as a matter of law that the crimes charged in the Information did in fact occur as alleged in said Information. Moreover, you will take as true the following facts:

"On the evening of February 16, 1969, a Sunday night, a man named Joseph Sprofera climbed to the top of a one-story building located in the 7300 block of West 80th Street in Overland Park, Kansas. Sprofera had with him the tools described to you earlier. After reaching the roof of the one-story building, Sprofera approached a window on a two-story building which was immediately adjacent to the roof of the one-story building. The two-story building described is owned by Mrs. W. D. Fleming. Sprofera opened said window and entered into the two-story building. The room which he entered was an office leased by the Johnson County Democratic Party. Sprofera then tore loose the flooring and created a hole large enough for a man to pass through to the store directly below the office space leased by the Democratic Party. Sprofera lowered himself through said hole and entered into the store right below him which is known as Bea's Sample Shop. From that point, Sprofera approached the west wall of Bea's Sample Shop. Sprofera proceeded to remove some wood paneling to the wall, and then broke open a large hole through that wall to the next adjoining shop which was Perrin's Jewelry Store. Sprofera proceeded through that hole and did emerge into Perrin's Jewelry Store. Sprofera then proceeded to a part of the store where three jewelry cases were being kept. These jewelry cases were the property of Ed Cain and Company of Chicago, Illinois. The rightful possessor of these cases was one William Merkel, a salesman for Ed Cain and Company. The cases were full of diamond rings and other gems. The cases were used by salesman Merkel to demonstrate to potential buyers the jewelry line of Ed Cain and Company. However, on week-ends, Merkel stored these cases at Mr. Perrin's jewelry store. The market value of the jewelry was $25,000. Sporfera stole the three jewelry cases and departed from the store through a back door which led to an alley. Sprofera was met in the alley by one William Kirkpatrick who picked up Sprofera in a 1968 Chevrolet automobile. The two men then proceeded in the car a short distance when they were apprehended by agents of the Federal Bureau of Investigation and Overland Park police officers. Both men are now serving penitentiary sentences for their participation in these crimes.

"Therefore, the sole issue to be determined by you is whether or not this defendant, Michael Lynn Goodman, was guilty of counseling, aiding, or abetting those other parties who were the actual perpetrators of the crime. You must remember that the defendant is presumed innocent until proven guilty beyond a reasonable doubt."

Michael Lynn Goodman (defendant-appellant) seriously contended at the trial that he was implicated by Allen Perrin, the owner of Perrin's Jewelry Shop, "however, not for any part in this crime, but from the vengeance of Perrin, who had been cheated by Goodman."

The state's evidence discloses that Allen Perrin (hereafter Perrin) was by occupation the owner of a retail jewelry store which

he ran in Overland Park, Kansas. In November, 1968, the appellant became an acquaintance of Perrin. He offered to sell Perrin some jewelry but Perrin being suspicious called the F. B. I. Perrin did, however, from time to time buy jewelry and gems from Goodman.

On one of his visits to the store, the appellant presented a scheme to Perrin whereby the appellant's "boys" would steal the jewelry line of a salesman, William Merkel. Merkel stored his jewelry line in Perrin's store on weekends. Perrin pretended to go along with the idea but informed the F. B. I. of all developments. Perrin's communication to the F. B. I. was with an agent named Yates Webb.

In the development of the plan Sprofera was brought to the store by the appellant during a Christmas Eve party given by Perrin at the jewelry store in 1968. At that time Sprofera "looked over the store." Thereafter, the appellant introduced one Kirkpatrick to Perrin at a luncheon meeting. At such meeting further details were discussed by those parties. Perrin testified:

"Q. Mr. Perrin, as a way of getting into this, I will ask you if you had any advance knowledge that these crimes were going to take place on February 16th? That is did you have any knowledge they might take place before they actually happened?

"A. Yes, sir.

"Q. All right. Did your acquaintanceship with any of these three men, Sprofera, Kirkpatrick or Goodman have anything to do with that knowledge?

"A. Yes, sir.

"Q. All right. Any particular one of them or all three of them?

"A. Mike Goodman was the one that I had contact with."

Concerning the luncheon meeting at which Perrin met with Goodman and Kirkpatrick, Perrin testified:

"Q. Was there any instructions given you at that luncheon or meeting by Mr. Goodman or Mr. Kirkpatrick?

"A. Al Kirkpatrick stated at the time that he could hit him outside the store and take the line there, and I wasn't in favor of this as much, because I didn't want any harm to come to Bill Merkel over it. So Mike Goodman stated if I would take care of the alarm system so they could come in to the store, which I agreed to do, and I shut the alarm off when they told me it was time to shut the alarm off."

After working out the details the only question remaining was when the acts would take place. The caper was finally triggered by the appellant who notified Perrin by telephone to disconnect the alarm system on the weekend of February 16, 1969. Perrin went to the store, disconnected the alarm system on the west wall and re-

turned home. The details of the actual crimes are set forth in the written stipulation agreement. (Instruction No. 2, *supra.*)

The appellant contends there was no substantial competent evidence that he counseled, aided and abetted the actual perpetrators of the crime.

The position taken by the appellant is that it was the appellant, and not Perrin, who had been propositioned to burglarize the jewelry line. In this connection he cites the Christmas party given by Perrin whereby Sprofera was permitted to attend and look the place over. He further relies upon the fact it was only the testimony of Perrin that linked the appellant to Sprofera and Kirkpatrick; and that there was no evidence that the F. B. I. ever observed Sprofera or Kirkpatrick with Goodman, or that any surveillance was conducted by the F. B. I. He also relies on the testimony of Perrin that the only thing the F. B. I. knew about the case was what Perrin had told them.

The appellant argues:

"There was absolutely no substantial competent evidence that Goodman ever counseled the principals, unless one considers Perrin as a precipitating cause, and he, of course, was not charged in the commission of a felony by voluntarily turning off the burglar alarm system of his store."

Webb, the F. B. I. agent, testified and confirmed the reports Perrin made by telephone to him concerning the progress of the planned burglary.

The appellant by his own admission testified he was by occupation a hustler and cheat, dealing in anything that could be sold for a profit—that he made his living by cheating and defrauding others. Evidence offered by the defense further establishes that the appellant was acquainted with Sprofera and Kirkpatrick; that the appellant was in the company of Kirkpatrick's wife the day after the crimes; and that he would have no moral reservations about committing these crimes, but the appellant said he did not participate because he did not trust Perrin completely.

The jury simply did not believe the testimony of the appellant. Certainly, there was substantial competent evidence from which the jury could find that the appellant counseled, aided and abetted in the commission of the crimes. In fact, the evidence most favorable to the state, as we must view it on appeal, discloses the appellant engineered the crimes.

The rule is stated in *State v. Holle*, 202 Kan. 592, 451 P. 2d 237, as follows:

"An appellate court will not weigh conflicting evidence. It is the function of the trier of facts, not that of a court of appellate review, to weigh evidence and pass upon the credibility of witnesses. A verdict of guilty, when approved by the trial court, must stand if supported by substantial competent evidence. Where the sufficiency of evidence is being reviewed, the function of an appellate court is limited to ascertaining whether there was a basis for a reasonable inference of guilt. The general rule is—before a verdict approved by the trial court may be set aside on appeal for insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence. (See, also, *State v. Scoggins*, 199 Kan. 108, 427 P. 2d 603.) (pp. 593, 594.)

It is to be noted that no defenses were raised relative to entrapment or "consent to enter" the jewelry store. As a possible defense, entrapment was abandoned by the defense. Any claim that the burglary did not take place because of Perrin's role was likewise abandoned when the appellant entered into the written stipulation agreement which established as a matter of law that the burglary did take place.

The appellant next contends the trial court erred in denying the use of Kirkpatrick's deposition.

On the 3rd day of October, 1969, a judge of the district court of Johnson County, Kansas, entered an order which authorized the taking of the deposition of a prisoner confined in the Kansas State Penitentiary named William Arthur Kirkpatrick. Pursuant to that order his deposition was taken at the state penitentiary. A representative of the county attorney's staff was present, the deponent was placed under oath and he was subjected to cross-examination. In the deposition testimony Kirkpatrick answered only those questions he desired to answer. The effect of the deposition was to absolve Goodman of the crimes.

On the morning of the trial, the appellant's attorney announced in chambers his intention to introduce the deposition testimony of Kirkpatrick pursuant to the conditions of K. S. A. 60-226 (*d*) (3) (III). In support of the deposition's introduction the appellant claimed surprise because the state was not going to produce Kirkpatrick, who had been named by the state on the information, as a witness. Kirkpatrick was in prison, but the trial court refused to admit the deposition in evidence.

This point has no merit. The appellant had no right to assume the state would produce at the trial all witnesses listed on the information. If the appellant really wanted Kirkpatrick at the trial, it was his responsibility to take the proper steps to have

him present, or show that his attendance could not be procured. The appellant's attorneys were informed unconditionally when Kirkpatrick's deposition was taken that the state did not intend to use him as a witness; hence, no surprise can be claimed.

Furthermore, upon refusal to admit Kirkpatick's deposition in evidence, the trial judge offered to issue a subpoena and have him produced upon the condition that the appellant's attorneys prepare an order to that effect. Their failure to do so makes it obvious the appellant did not want Kirkpatrick present to testify; rather, the only desire was to present in evidence a one-sided deposition.

Under these circumstances the trial court's refusal to admit the deposition testimony of Kirkpatrick was entirely proper. Assuming, without deciding, the use of depositions at the trial in criminal cases was controlled by the new code of civil procedure (K. S. A. 60-226 [d]) prior to July 1, 1970, the appellant was not "unable to procure the attendance of the witness by subpoena." (K. S. A. 60-226 [d] [3] [IV].) The use of depositions was formerly prescribed by G. S. 1949, 60-2819. Under this section the deposition of a prisoner could be used when he was *unable* to attend court. The section in the new code of civil procedure really makes little, if any, change in the Kansas law respecting the use of the deposition after it is taken. (Gard, Kansas Code of Civil Procedure Annotated, § 60-226 [d], p. 138.)

The appellant specifies that the trial court erred in quashing the notice and subpoena issued to take the deposition testimony of Perrin and Webb.

After the preliminary hearing counsel for the appellant made demand for a written transcript from the court reporter of the testimony of Perrin and Webb, the state's only two witnesses who could shed any light on Goodman's involvement. After repeated requests, it was finally disclosed the notes taken on the second day of the preliminary hearing had been lost. In the meantime, counsel for the appellant had issued a notice to take the depositions with a subpoena issued for Webb and Perrin. Upon motion of the state this was quashed by the trial court.

The witnesses whom the appellant sought to depose were present at his preliminary hearing, where the attorneys for the appellant cross-examined the witnesses at length. Defense counsel had available to them also the transcripts of the same witnesses' testimony in the Sprofera case. Furthermore, the record discloses both Webb

and Perrin were called by the state and testified in person at the appellant's trial, where counsel for the appellant cross-examined both of these witnesses upon their direct testimony and upon alleged discrepancies concerning their testimony given at the preliminary hearing.

The primary point argued by counsel for the appellant concerned an alleged discrepancy by Webb, the F. B. I. agent, in his testimony. At the trial Webb testified he wrote up the results of his contact with Perrin relative to the planning of the burglary in question. When Webb was asked whether he made a report to the bureau he answered, "No. Let me—." Apparently his answer was cut off, but it appears from the record he made no report to the bureau because no positive federal violations were indicated prior to February 15, 1969.

Counsel for the appellant cross-examined Webb as follows:

"Q. And did you or did you not state at that time under oath that you did not have any records concerning any of these transactions or visits?
"A. I did not testify to that.
"Q. That is your best recollection?
"A. Yes."

James D. Howell, counsel for the appellant, at the trial took the stand and testified under oath that he made notes concerning the testimony of Webb at the preliminary hearing and recalled asking Mr. Webb about written records. He said his notes disclosed that Mr. Webb made no written file. On cross-examination, however, he testified:

"Q. Mr. Howell, since you don't recall specifically the question, I suppose it is possible that the question might have been, 'Did you bring your written records with you to this hearing?'
"A. I wouldn't say that couldn't have been the question."

The appellant contends the inconsistencies and inaccuracies evident by the testimony of Perrin and Webb at the preliminary hearing which he sought to develop as a defense by further deposition inquiry based upon the recorded preliminary hearing, taken in conjunction with the announcement of the lost notes by the court reporter, so prejudiced the defense as to deny the appellant the benefit of counsel and a fair trial.

On the record presented we fail to see merit in the appellant's argument on this point.

If such pretrial discovery depositions were authorized prior to the advent of the new code of criminal procedure, it is necessary

to find such authorization in K. S. A. 62-1313; 62-1314; 62-1315 and 62-1426, and to construe such sections of the code of criminal procedure as having application to the new code of civil procedure which first became effective January 1, 1964. We need not, however, determine this question. Here counsel for the appellant failed to comply with the foregoing sections of the code of criminal procedure in that no application was made for a *commission* to examine the witnesses whose deposition testimony they sought.

On somewhat different factual situations, in *State v. Jeffries*, 117 Kan. 742, 232 Pac. 873; and *State v. Furthmyer*, 128 Kan. 317, 277 Pac. 1019, the defendants argued the discovery rule in the old code of civil procedure was made applicable to criminal procedure by the adoption provision of the criminal code relating to the testimony of witnesses. (K. S. A. 62-1413.) In both cases the court summarily rejected this argument. In the *Jeffries* case the court held letters written by the defendant were not discoverable. In the *Furthmyer* case the court overruled the defendant's pretrial motion to inspect and obtain a copy of statements made to the police by the prosecution witnesses.

It is to be noted the court is not here dealing with a case of suppression of evidence. (See *Brady v. Maryland*, 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; and *Miller v. Pate*, 386 U. S. 1, 17 L. Ed. 2d 690, 87 S. Ct. 785.)

Here the trial of the appellant's case occurred before the new code of criminal procedure went into effect (July 1, 1970). Nonetheless, even if the trial of the appellant's case had been governed by the new code of criminal procedure, it is abundantly clear he would not have been allowed to take the depositions in question. K. S. A. 1970 Supp. 22-3211 provides in part:

"(1) If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an information or indictment may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition. . . ."

Here the prospective witnesses were present, available and did appear and testify at the appellant's trial.

Under the circumstances here presented, the appellant has failed to make it affirmatively appear he was prejudiced by the order of the trial court sustaining the state's motion to quash the appellant's

notice and subpoena issued to take the depositions of Perrin and Webb.

Lastly, the appellant contends the trial court erred in charging the jury on the law of aiding and abetting by instruction No. 10.

At the trial prior to the opening statement of counsel for the respective parties the trial court fully instructed the jury on the law of the case. It again instructed the jury giving the same instructions, with four additional, at the close of all the evidence in the case. The aiding and abetting instruction, although numbered differently, was identical in each set of instructions. This instruction reads:

"Any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal.

"As used in the above sentence the words hereinafter set out have the following meaning:

"A principal is a person who directly commits the act or acts constituting an offense.

"Counsel means to recommend or advise *another* in the commission of an offense.

"Aids means to help or give support to.

"Abets means to encourage the commission of an offense." (Emphasis added.)

While it is unorthodox to instruct a jury in a criminal case prior to the opening statements of the respective counsel, appellant's counsel did not object to this procedure in the instant case. In view of instruction No. 2, necessitated by reason of the parties' stipulation, the instructions were given prior to the opening statements of counsel.

The only objection made by counsel for the appellant to the giving of instructions prior to the opening statements was that at that time there was no evidence before the court concerning counseling, aiding or abetting.

We fail to see any merit in this objection because the agreement set forth in instruction No. 2 specifically stated the sole issue to be determined by the jury in the trial of a case was whether or not the defendant was guilty of counseling, aiding or abetting those other parties who were the actual perpetrators of the crime.

The thrust of the appellant's specific objection on appeal to the "counseling, aiding and abetting" instruction is that the instruction does not define the word "another," heretofore emphasized. No such objection was made at the trial.

At two other places in the court's instructions the word "another" was specifically defined to be the actual perpetrators of the crime. It appears in both the first and the last paragraphs of instruction No. 2; thus, the jury was informed the term "another" meant the actual perpetrators of the crime.

The appellant has failed to make it affirmatively appear he was prejudiced by the instructions given in the trial of this case.

Accordingly, the judgment of the lower court is affirmed.