## PEOPLE *v.* HUDSON

### OPINION OF THE COURT

1. CRIMINAL LAW—PRESUMPTION OF INNOCENCE.

    The presumption of innocence in a criminal prosecution must be applied; the presumption is not to be paid mere lip service.

2. CRIMINAL LAW—BURDEN OF PROOF.

    A verdict of guilty in a criminal case cannot properly rest on a mere preponderance of the evidence, but should be based on proof that leaves no reasonable doubt.

3. ROBBERY — EVIDENCE — PARTICIPATION IN CRIME — REASONABLE DOUBT.

    Defendant's conviction of unarmed robbery was reversed where the defendant admitted his presence at the bar behind which the robbery took place, but denied participation in the crime and stated that he ran from the scene of the crime when a commotion, preceding the robbery, began, neither of the two complainants could identify the defendant as a participant in the crime nor remember seeing him in the bar before the incident, and the testimony of one of the admitted robbers was the only evidence directly implicating the defendant in the crime and the robber's testimony was replete with contradictions, because the evidence did not establish the defendant's guilt beyond a reasonable doubt.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 10, 12, 224–226.
Presumption of innocence as evidence. 152 ALR 626.
[2] 29 Am Jur 2d, Evidence § 125.
30 Am Jur 2d, Evidence §§ 1163, 1168, 1170–1172.
[3, 4] 29 Am Jur 2d, Evidence §§ 81, 115–134.
[5] 5 Am Jur 2d, Appeal and Error § 867.

4. Robbery—Unarmed Robbery—Evidence—Participation in Crime
   —Sufficiency.

   > Testimony of a witness that he saw the defendant take money
   > from one of the robbery victims, testimony of another witness
   > that she saw the defendant in a scuffle with the complainants,
   > and the testimony of a third witness that he saw the defend-
   > ant soon after the robbery standing near the bar behind which
   > the robbery took place and that he took the money from the
   > defendant was sufficient to show the defendant's participation
   > in the unarmed robbery charged.

5. Criminal Law—Appeal and Error—Scope of Review.

   > The task of an appellate court is to determine if proof of the
   > elements of the crime alleged are presented to the jury, not
   > to weigh the testimony.

Appeal from Monroe, James J. Kelley, Jr., J.
Submitted Division 2 November 5, 1970, at Lansing.
(Docket No. 9015.) Decided December 10, 1970.
Leave to appeal granted May 7, 1971. 384 Mich 836.

Booker T. Hudson, Jr., was convicted of unarmed
robbery. Defendant appeals. Reversed.

*Frank J. Kelley*, Attorney General, *Robert A.
Derengoski*, Solicitor General, *James J. Rostash*,
Prosecuting Attorney, and *John R. Whitehouse*,
Assistant Prosecuting Attorney, for the people.

*Patricia Costello*, for defendant on appeal.

Before: Bronson, P. J., and Fitzgerald and
Churchill,* JJ.

Bronson, P. J. Defendant was charged and con-
victed by a jury of unarmed robbery[1] and was sen-
tenced to 2–1/2 to 15 years in prison. Defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 750.530 (Stat Ann 1954 Rev § 28.798).

appeals his conviction, alleging that the evidence presented was insufficient to establish his guilt beyond a reasonable doubt.

Our standard of review is that announced in *People* v. *Spann* (1966), 3 Mich App 444, 451:

"In reviewing a jury determination in a criminal appeal, this Court must tread lightly, as the jury viewed the witnesses, heard all the testimony, and was in a superior position to determine the credibility of all that passed before it. Therefore, if proof of the elements of the crimes alleged was presented to the jury, its verdict must stand."

Defendant's participation in the crime is an obvious element which the prosecution must prove beyond a reasonable doubt.

The facts of the instant case can be briefly stated. The complainants, two Mexican migrant workers, had driven to Monroe, Michigan, on the evening of July 28, 1969, and had stopped at a local bar. As the complainants departed from the bar, they were led to the rear of the building where they were held, beaten, and robbed by a group of six or seven people.

At trial, neither of the complainants was able to identify the defendant as a participant in the crime nor could they remember if they had seen the defendant in the bar before the incident. Defendant admitted that he was present at the bar when the incident occurred, but denied participation in the crime. Defendant testified that he ran from the scene when the commotion started.

The only testimony that directly implicated defendant in the crime was that of Charles Garrett, an admitted participant in the crime. Mr. Garrett's testimony was replete with contradictions, as evidenced by the following portions of the transcript:

"*Q*. Did you see Booker Hudson take any money from anyone?

"*A*. Yes, I did.

"*Q*. And do you know which person Booker Hudson took money from?

"*A*. I don't know his name.

"*Q*. Well, there were two Mexicans involved in this, weren't there?

"*A*. Yes, there was.

"*Q*. And is one younger than the other one?

"*A*. Yes.

"*Q*. And one is smaller than the other one?

"*A*. Yes.

"*Q*. Which one—do you remember if it was the short one or the taller one?

"*A*. The shorter one.

"*Q*. The shorter one? That's also the older one, the older man, too, isn't it?

"*A*. Yes.

\*    \*    \*

"*Q*. How much money did you get out of it?

"*A*. I didn't get any.

"*Q*. You didn't get any?

"*A*. No.

"*Q*. Did you see Booker Hudson with any money?

"*A*. I didn't see him with any, no. I don't recall seeing him. He might have had some. I don't know.

"*Q*. Who all participated in this robbery, Mr. Garrett? Who was back there behind the Traffic Jam Bar?

"*A*. I can only tell you what I heard. I don't know who all was back there.

"*Q*. But you saw Booker Hudson back there, though?

"*A*. Yes.

"*Q*. Did you see him hit anyone?

"*A*. No. I don't recall seeing him. It was too dark to even see that.

"*Q.* Did you see one of the Mexicans being hit at all?

"*A.* Like I say, it was too dark.

"*Q.* But you still know for sure that Booker Hudson was back there?

"*A.* Yes.

"*Q.* You don't know whether any money was taken or not, do you? Or do you?

"*A.* I only know what I heard. When I was back he [defendant] was running past. I don't know whether he was running from the commotion back there or what.

\* \* \*

"*Q.* Did you see Booker Hudson around the older Mexican, the shorter Mexican?

"*A.* Yes.

"*Q.* Did you see him doing anything to the older, shorter Mexican?

"*A.* When I saw him, like I say, he was running past—when I got there he was running towards me and it looked as though he was running to this older guy and ran into me. It looked like he was just running down the street and run into the old man and the old man ran into me and he went around, see?

\* \* \*

"*Q.* You didn't see Booker Hudson with his hands in anyone's pockets, did you?

"*A.* He might of had his hands in his pocket, it looked as though he had his hand in his pocketbook, you know, I'm not saying that he had his hands in his pocket."

An exhaustive review of the record establishes only that the defendant was present at the scene of the crime, yet neither his direct nor indirect participation in it was established. Thus, the jury was asked to infer from the defendant's presence at the bar and his flight from it that he was a participant.

The presumption of innocence in criminal prosecutions ought not be paid mere lip-service. If the doctrine is to have any meaning, and not ring hollow as a meaningless jurisprudential aphorism, it must be applied. As Chief Judge Lesinski, writing for the majority in *People* v. *Spann, supra,* p 453, aptly stated:

"The presumption of innocence under our system of jurisprudence is no idle philosophical expression. This presumption surrounds defendant Adams as thoroughly and completely as a cloak of the hardest steel vulnerable only to proof beyond a reasonable doubt. It is the reasonable possibility of innocence which can be attached to Adams' involvement herein that causes us to find for Adams.

"The quantum of proof adduced by the people in this case may reach the level of a preponderance of the evidence, but it does not reach the level of proof beyond a reasonable doubt. As the Supreme Court so aptly stated in *People* v. *Gadson* (1957), 348 Mich 307, 310, speaking through Justice Dethmers:

" '*A verdict of guilty in a criminal case cannot properly rest on a mere preponderance of the evidence, but should be based on proof that leaves no reasonable doubt of guilt. People* v. *Sligh* [1882], 48 Mich 54; *People* v. *Mayrand* [1942], 300 Mich 225; *People* v. *Franczyk* [1946], 315 Mich 384. The people must prove every element of the crime charged by direct or circumstantial evidence beyond a reasonable doubt. People* v. *Bagwell* [1940], 295 Mich 412.' (Emphasis supplied.)"

Applying these principles to the instant case, we conclude that the prosecution failed to establish defendant's guilt beyond a reasonable doubt.

Judgment reversed.

Fitzgerald, J., concurred.

CHURCHILL, J. (*dissenting*). I am unable to agree with the majority opinion that the defendant's conviction should be reversed.

Two men left a bar late at night. They were taken in back of the bar building by a group of men and were beaten and robbed of currency. Defendant was there. Charles Garrett testified that he saw defendant take money from the smaller of the two victims. Carolyn Page testified that she saw defendant in the scuffle. Jacob Hood testified that soon after the robbery defendant was standing near the bar and he, Hood, took money from defendant's hand.

It is not for us to weigh the testimony, but rather to determine if proof of elements of the crime alleged was presented to the jury. *People* v. *Spann* (1966), 3 Mich App 444; *People* v. *Cunningham* (1969), 20 Mich App 699. Applying this standard, I vote to affirm.