No. 46,849

THE STATE OF KANSAS, *Appellee*, v. CHARLES WHITE, *Appellant*.

(508 P. 2d 842)

Opinion filed April 7, 1973.

*Don W. Riley*, of Wichita, argued the cause and was on the brief for the appellant.

*Keith Sanborn*, district attorney, argued the cause, and *Vern Miller*, attorney general, and *Reese C. Jones*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from conviction of aggravated robbery (K. S. A. 1972 Supp. 21-3427) based upon the aiding and abetting statute (K. S. A. 1972 Supp. 21-3205).

On March 29, 1971, at about 11:00 a. m., Clifford Holloway, companion of defendant Charles White, robbed the Thriftway Market at 611 East 35th Street N. in Wichita. Witnesses to the robbery testified Holloway entered the store, looked around, walked to the check stand, pulled a .25 caliber automatic pistol from his jacket pocket, and said, "I want the money." After being handed $214.00 he went out the door and walked unhurriedly east one-half block, got into a brown Chevrolet driven by another, and headed north on Santa Fe Street. The car drove away slowly. Witnesses also

testified they had never seen defendant White before the preliminary hearing, but Holloway had been in the store before.

A cruising patrol car spotted defendant's automobile, a 1959 white over brown Chevrolet, from the description given by witnesses to the robbery. Defendant White stopped immediately upon seeing police car's red light. He was driving without a license, but showed officers his social security card for identification. He got out as told and placed his hands on top of the car. He did not resist arrest or questioning in any way. Holloway, seated on the passenger side, came up with a gun and shot at the three officers several times before being subdued. He threw the sunglasses he had worn during the robbery on the floor of the car. Holloway had $223.21 in his possession. Officers found less than five dollars in defendant's possession.

The defendant's defense to the charge of aiding and abetting an armed robbery is no knowledge of Holloway's intent to commit a robbery, nor knowledge a robbery had been committed.

A summary of the defendant's testimony follows. He first met Holloway at the home of a mutual friend where Holloway arranged for him to rent his grandmother's house. They had been together perhaps five or six other occasions for one or two hours at a time. On March 29, 1971, Holloway came to his house and asked for a ride downtown. He resisted, stating he had no gas for his car, but Holloway insisted and agreed to buy some gas. They headed for town and Holloway bought gas for the car. He then drove Holloway to a department store and kept driving around the block until Holloway came out of the store carrying a package. They returned to defendant's home for cigarettes and his wife asked him to get some soup from the grocery store. Holloway then wanted to go get some money from a girl and directed defendant to drive to Santa Fe Street near 35th Street N. He was told to let Holloway out, go turn around, and pick him up again. Santa Fe Street at that point is unpaved and narrow and he had to drive three blocks before finding a place to turn around. When he returned to pick Holloway up, he observed him walking across the street at a normal pace about one-half block away. Holloway got into the car saying, "the bitch wasn't home." Defendant drove on, intending to go to a grocery store near his home to get the soup his wife wanted.

When police stopped defendant's car and instructed him to get out he assumed he was being questioned because his driver's license was expired and he was driving without a license. When the shoot-

ing by Holloway and police began, defendant did not move from his upright position with hands on top of the car for fear he would be shot by police. After Holloway was subdued, defendant was told to lie on the ground, which he did. He was handcuffed and taken to police headquarters where he told officers about his association with Holloway. He thought he was being questioned at that time about the shooting. Later, when asked by officers about the robbery, he stated this was the first he knew of Holloway's activities and that he had never discussed a robbery with Holloway on that day or any other day, and that most of their conversation was about women. He told the officers he had not seen anything to make him believe Holloway intended to commit a robbery and he did not know Holloway owned or carried a gun or had committed a robbery until he was told by police.

The defendant receives a pension or disability check as a result of having four toes off his right foot and a dead nerve in his back.

The defendant objected to the trial court's instruction on aiding and abetting because it did not include the word "intentionally." The instruction corrected this shortcoming in its second paragraph by use of the phrase "knowing his purpose and intent to commit the robbery." Read as a whole the instruction was not erroneous and was typical of instructions on aiding and abetting previously approved by this court. *(State v. Winters.,* 120 Kan. 166, 241 Pac. 1083; *State v. Goodman,* 207 Kan. 155, 483 P. 2d 1040.) Nevertheless, it would be better practice to phrase the instruction in the words of K. S. A. 1972 Supp. 21-3205:

"(1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

The defendant further claims it was error to admit into evidence the sunglasses worn by Holloway, the money found on Holloway at time of arrest, and the weapon used by Holloway. He was charged with aiding Holloway in an armed robbery; therefore, the state must prove Holloway's perpetration of the crime as well as defendant's conspiracy with him. The weapon and loot are necessary to prove elements of armed robbery against Holloway and the sunglasses were part of the identification of Holloway by witnesses. Admission of these exhibits into evidence was not error.

The defendant claims it was error to admit into evidence numerous photographs of his automobile which show its bullet-riddled condition after the shoot-out between Holloway and police.

Defendant alleges these were introduced only to shock the jury and prejudice them against him. There is some merit to this objection. The twenty photographs of defendant's car from all conceivable angles, inside and out, have a cumulative effect. Photographs of the whole automobile are a necessity in identifying defendant's automobile as the one seen leaving the scene of the crime. Some of the photographs were close-ups of bullet holes in the car. It is difficult to justify the use of photographs of bullet holes in the upholstery, the door lock, front windshield, etc., for identification purposes. The exercise of proper judicial discretion could have limited the number and nature of these photographs, but we cannot say prejudicial error occurred in their admission.

The defendant claims it was error to admit any evidence or testimony about the acts of Holloway after he was in police custody. Defendant was not charged with resisting arrest or assaulting an officer; therefore, he claims such testimony was irrelevant and its only purpose was to inflame and prejudice the jury against him. Evidence of the circumstances surrounding the arrest of defendant and Holloway is a necessary foundation for introducing other evidence proving elements of the crime against Holloway.

The defendant states he should be discharged since the state's evidence was insufficient to connect him with the crime or to show he was a participant in the crime. Our role on appeal has been consistently and frequently repeated. A verdict of guilty will not be set aside because of insufficiency of evidence unless it is clearly made to appear that upon no hypothesis whatsoever is there substantial evidence to support the conviction in the trial court. *(State v. Paxton,* 201 Kan. 353, 440 P. 2d 650.) It is the jury's function to judge the reasonableness of the hypothesis. We cannot say that under all the facts and circumstances in the record, and the inferences that can reasonably be drawn therefrom, there is no substantial evidence to support the jury's verdict. We recognize the evidence against the defendant was entirely circumstantial. The trial court failed to instruct the jury on circumstantial evidence, even though the instruction was requested by the defendant. A proper instruction on circumstantial evidence cautions that the defendant should not be found guilty unless the facts and circumstances proved exclude every reasonable theory of innocence. (PIK 52.16.) We believe it logical and reasonable that if such an instruction had been given and conscientiously applied, the result

could have been an acquittal. We believe defendant was entitled to a circumstantial evidence instruction and failure to give it was error. We find support in *State v. Andrews*, 62 Kan. 207, 61 Pac. 808; *State v. Gereke*, 74 Kan. 196, 86 Pac. 160; *State v. Truskett*, 85 Kan. 804, 118 Pac. 1047; *State v. Miller*, 90 Kan. 230, 133 Pac. 878. In *Truskett* we said:

"An instruction relating to circumstantial evidence was requested and refused. It has been held that an instruction upon that subject should be given if requested where the evidence is such that the conviction might be upon circumstantial evidence alone. . . ." (p. 820.)

In *State v. Skinner*, 210 Kan. 354, 503 P. 2d 168, we held that an instruction on circumstantial evidence is not required when there is direct evidence of the guilt of the accused. Since there was no direct evidence of the guilt of the defendant in this action, *State v. Skinner*, supra, is distinguishable.

Other assignments of error need not be considered since we are reversing the trial court and remanding the case for a new trial.

OWSLEY, J., concurring and dissenting: I concur with the opinion of the majority that the trial court erred in failing to give an instruction on circumstantial evidence and that the case should be reversed and remanded on that ground. I disagree with the majority opinion in its conclusion that the evidence was sufficient to submit the case to the jury. A meticulous search of the record fails to reveal any knowledge on the part of defendant White as to what his passenger, Holloway, was going to do or had done. There was not only lack of knowledge on the part of defendant, but there was nothing in the record upon which suspicion could have been predicated that Holloway was going to do anything other than what he stated to the defendant.

An excellent expression of the law which I feel should be applied in this case is contained in *People v. Hill*, 77 Cal. App. 2d 287, 175 P. 2d 45 (1946):

"It is to be observed that there is not a word of testimony that appellant had previous knowledge of the felonious purpose entertained by his two guests. The only possible support for his conviction must therefore be found in reasonable inferences deducible from the testimony and the circumstances. The incriminating circumstance was appellant's driving the men to the cafe and waiting in his automobile while they visited the place.

"By all the evidence favorable to the state's contention nothing was established but a suspicion of appellant's guilt. The testimony of the People's witnesses is devoid of act or word that may be interpreted as competent proof of

a crime. If the trial court had believed the two convicts and appellant, the latter's conviction could not have resulted for they completely exculpated him. If it disbelieved them, as of course it was privileged to do, a conviction was out of the question, for the record discloses that the total of the state's evidence is wanting in the essentials of proof of an established crime. To suspect an accused is the privilege of prosecutor, judge or layman when he has been found in the company of criminals. But to put the brand of infamy upon a person because he has been brought to the bar can find no justification in law or morals. To do so is to disregard legal principles, long cherished. Appellant entered the courtroom clothed with the presumption of innocence which shielded him until his guilt was established beyond a reasonable doubt. (*People v. Martinez*, 57 Cal. App. 771, 774 [208 P. 170].) This could have been done only by substantial proof that he knowingly assisted the robbers to accomplish their purpose or to escape detection after he had gained knowledge of the crime." (p. 292.)

Although I find no similar expression in our Kansas cases, ample authority to the same effect is found in *Isaac v. State*, ___ Ind. ___, 274 N. E. 2d 231 (1971); *People v. Caruso*, 68 C. 2d 183, 65 Cal. Rptr. 336, 436 P. 2d 336 (1968); *Goodwin v. United States*, 347 F. 2d 793, (D. C. Cir. 1965); *State v. Aycoth*, 272 N. C. 48, 157 S. E. 2d 655 (1967); *People v. Hudson*, 29 Mich. App. 285, 185 N. W. 2d 134 (1970).

The effect of the court's majority opinion is startling. It means the driver of an automobile may be held responsible for all criminal acts of his passengers without a showing that he had any knowledge of their illicit purposes and without a showing of any facts from which the driver could reasonably be expected to know of such purposes.

In criminal appeals the guilt or innocence of the defendant is seldom the issue on appellate review. Under the leadership of the Supreme Court of the United States, this court, as well as others, has assumed the role of a jealous guardian of the constitutional rights of criminal defendants. In many instances defendants, admittedly guilty, seek and frequently obtain exoneration for their crimes, based on a violation of constitutional safeguards.

It appears from the decision of the majority of this court that insufficiency of evidence to convict does not enjoy the judicial popularity of constitutional technicalities. I would reverse the trial court and discharge the defendant.

PRAGER, J., joins in the foregoing concurring and dissenting opinion.

FONTRON, J., concurring: I agree this case should be returned for a new trial, but base this conclusion on the erroneous admission of evidence. The state proffered twenty-three pictures of the exterior and interior of the automobile driven by the accused, showing numerous bullet holes in the vehicle. Although the identity of the vehicle was material to the issue involved in this case, I see no justification for the admission of this plethora of pictures depicting in detail the bullet riddled condition of the car. This accused was not charged with aggravated assault and the evidence clearly shows he took no part in the shoot-out.

I am at a loss to understand why the state should seek to get this profusion of pictures before the jury, were it not for the purpose of creating a harmful, if not prejudicial atmosphere. In my view, this appears to be a plain case of over-kill on the part of the state, and I am not prepared to say, under the particular circumstances of this case, that the accused's right to a fair trial was not prejudicially affected.