Raymond T. DAVIS, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 22128.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 18, 1969.

Decided June 30, 1970.

Mr. Arthur B. Hanson, Washington, D. C. (appointed by this court), for appellant.

Mr. Donald T. Bucklin, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., Harold H. Titus, Jr., Principal Asst. U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before WRIGHT, LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

On the morning of March 27, 1967, the day after Easter, a line of people was outside the White House grounds waiting to gain entrance to observe the children's annual Easter Egg Roll. While waiting in line with this group, Mrs. Frances A. Bergherm discovered that her wallet was missing from her purse. Shortly thereafter the appellant herein was discovered in possession of Mrs. Bergherm's wallet and was later tried and convicted of robbery in violation of 22 D.C. Code § 2901 (1967). We find no error in the record and affirm the judgment entered on the conviction.

## I. The Evidence

Officer Douglas C. McPherson testified that on the morning in question he was on duty at the White House, assigned to control pedestrian traffic in a

30-foot area along the south side of the White House grounds. Several hundred people, mainly women and children, were lined up along the fence waiting to see the annual Easter Egg Roll. Between 9:40 and 10:10 a. m., Officer McPherson noticed appellant move in and out of four positions in the line, each time standing near different groups of women. He did not observe the appellant jostle anyone. Appellant, a male, was alone, while most adults present were women with children.

About 10:10 a. m. Mrs. Bergherm, the complaining witness, reported to Officer McPherson that her wallet had been taken from her purse. She told the officer that she had not seen who took the wallet but that someone near her said that it was a man in a brown coat. McPherson had already noted that the appellant was wearing a three-quarter-length tan coat. When told of the missing wallet, McPherson turned and saw appellant about 50 feet distant, moving away from the line of people. He chased after the appellant, who continued on another five or ten feet but stopped and turned back when he encountered another officer. As McPherson approached appellant, he noticed a bulge in appellant's pocket that he had not noticed during the previous twenty-minute period of observing him. McPherson stopped the appellant, told him a pocketbook was reported missing, and asked him if he knew about it. The appellant replied that he did not, and the officer then arrested and searched him, discovering the red wallet (of large dimensions, sometimes described as a pocketbook) in his right front pocket.

Mrs. Bergherm testified that she specifically recalled latching her purse, which was in good condition, before

being told by someone standing in line behind her that her purse was open.[1] She then noticed that her red wallet was missing. She approached Officer Mc-Pherson, who apprehended the appellant and searched him, revealing the wallet above his right front pocket and between his shirt and belt.[2]

## II. Legality of the Search of Appellant's Person

■ The circumstances described by Officer McPherson were sufficient to establish probable cause for the arrest and search. The appellant's behavior, as observed by McPherson for over twenty minutes, was suspicious and typical of a pickpocket. The very presence of this unaccompanied male was unusual; most other persons attending were children or women with children. Although he had been in and out of the line waiting admittance to the White House grounds for over twenty minutes, he was seen leaving the scene immediately after the loss of the wallet was reported to Mc-Pherson.

Officer McPherson saw under appellant's jacket a bulge (which turned out to be the wallet) that he had not seen earlier, although he had observed appellant attentively for twenty minutes and had been close to him on several occasions during that period, including one face-to-face conversation.

## III. Sufficiency of the Evidence That the Wallet Was Taken from the Immediate Actual Possession of the Complainant

■ Appellant, who did not testify, contends that the prosecution's evidence was not sufficient to permit the jury to conclude beyond a reasonable doubt that he gained possession of the purse from

---

1. She did not testify at trial, as the officer had testified at the pretrial hearing, that she had been told that it had been taken by a man with a brown coat. The attention of defense counsel was called to the fact that her testimony to the grand jury was to that effect.

2. The discrepancy between Mrs. Bergherm's positioning of the wallet and Officer McPherson's is not significant and was not raised by the appellant.

the immediate actual possession of the complainant, as required by the statute.[3] We disagree.

The material circumstances are quite different from those in Hunt v. United States, 115 U.S.App.D.C. 1, 316 F.2d 652 (1963), on which appellant relies. In *Hunt* a pickpocketing conviction was reversed, but the circumstances were such that the possibility that the wallet had dropped to the ground before being taken by the appellant was equally consistent with the evidence as the possibility that the appellant had taken it from the victim's purse. In Jackson v. United States, 123 U.S.App.D.C. 276, 359 F.2d 260 (1966), the court noted, *"Hunt* was an unusual case where there was a reasonable inference, from the proven jostling of the victim by the crowd, that the pocketbook opened and the wallet fell out. Here there was a group of people around the bus stop, but no evidence of any jostling or pushing of the victim, and no proven factual circumstances from which it could be inferred, by some reasoning going beyond mere speculation, that the wallet had fallen." 123 U.S.App.D.C. at 277–278, 359 F.2d at 261–262.

Similarly, in the case at bar, although the line stood six abreast there was no testimony of any jostling. Additional and cogent evidence pointing to a taking of the wallet as distinguished from the possibility that it had fallen out are first, the testimony of the police officer concerning the behavior of the appellant before the wallet disappeared—his suspicious movements in and out of a line waiting to see an event which he did not wait to see—and second, the victim's testimony that she specifically remem-

bered closing the clasp on her purse and that the latch was in good condition.[4]

Pickpocketing, or robbery by stealth, is a crime which, by its very nature, is difficult of proof. Generally, a stealthy taking will be an unobserved taking. Though *Hunt* established that mere unexplained possession is insufficient for conviction of robbery, *Jackson* and common sense indicate that unexplained possession plus suspicious circumstances can be submitted to the sound discretion of the jury.

### IV. Failure To Instruct the Jury on the Lesser Included Offense

The appellant complains that the District Judge refused to instruct the jury on the lesser included offense of larceny. The case calls for application of Belton v. United States, 127 U.S.App.D.C. 201, 207, 382 F.2d 150, 156 (1967), where we noted that evidence to justify a finding of guilt on the lesser included offense "could only be made out if the jury reached a conclusion as to occurrences not related in the testimony of any witness and obtained by a reconstruction of events. There may be cases where that kind of reconstruction is fairly inferable from testimony though not directly stated therein, but we do not think the present case warrants that description." Nor did defense counsel alert the judge as to what basis the jury might by use of reason as contrasted with sheer speculation, find defendant guilty of larceny but not a taking. As we pointed out in *Belton,* where the issue is close, the request of defense counsel should be given the benefit of the doubt. However, we cannot say the trial

3. 22 D.C.Code § 2901 (1967) provides: "Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery. * * *"

4. These facts make the rule of *Jackson* applicable even though there was no testimony at trial (*see* note 1), like that in *Jackson,* of a spontaneous exclamation by a bystander that he had seen a taking.

judge exceeded his discretion in denying the request in this case.

## V. The Ruling Permitting the Use of Two Petty Larceny Convictions To Impeach Appellant If He Testified

 After a hearing the judge ruled that the prosecutor would be allowed to impeach appellant, if he testified, with 1964 and 1968 convictions for petty larceny. There are factors favorable to appellant's objection to this—the similarity of the larceny offenses offered as impeachment to the pickpocketing offense at trial; and the extra need to hear from a defendant in possession of stolen property, *see* Smith v. United States, 123 U.S.App.D.C. 259, 260, 359 F.2d 243, 244 (1966). The District Court excluded two convictions for robbery (also for pickpocketing) which would obviously have been more damaging as relating to the same crime and encompassing verdicts of taking. The court also took into account that the jury would not have before it a stream of "jostling" and disorderly conduct petty offenses, which also are offenses commonly associated with pickpocketing, that resulted in sentences of 90 days or less. The court concluded that the two larceny offenses related to honesty, yet would not "be such as to pile up a record" that would be prejudicial beyond repair.

We cannot say that the judge exceeded the discretion available under, or disregarded the guidelines of Luck v. United States, 121 U.S.App.D.C. 151, 348 F. 2d 763 (1965); Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); *See also* United States v. White, 138 U.S.App.D. C. 364, 427 F.2d 634 (May 22, 1970).

Affirmed[5].

---

5. Appellant claims error in the failure of the judge to charge the jury to acquit if the evidence was equally consistent with a hypothesis of innocence. Though the case involved only circumstantial evidence, appellant was not entitled to more than the standard "reasonable doubt" instruction that was given.