No. 45,898

THE STATE OF KANSAS, *Appellee*, v. JAMES J. HALE, *Appellant*.

(485 P. 2d 1338)

Opinion filed June 12, 1971.

*Ray Hodge*, of Wichita, argued the cause and was on the brief for the appellant.

*David P. Calvert*, Deputy County Attorney, argued the cause, and *Vern Miller*, Attorney General, *Keith Sanborn*, County Attorney, and *James W. Wilson*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal by the defendant, James J. Hale, from a conviction on charges of first-degree kidnaping, first-degree robbery and grand larceny. The points raised on appeal relate primarily to the sufficiency of the evidence and the correctness of instructions. Sentences of life imprisonment were imposed on each of the three counts, all to run concurrently.

Throughout this opinion the appellant will be referred to as the defendant, or Hale, and the appellee as the state.

Because of the issues presented in this appeal, we are compelled to relate the facts in some detail.

The victim was an elderly gentleman by the name of Claude E. Thrush who was employed as a part-time watchman for a Wichita concern. He also spent some of his time assisting his daughter, Alfreda, in the operation of her tavern which was known as Angel's Lucky Seven.

On Monday evening, May 5, 1969, Alfreda had gone home early, leaving her father to look after the tavern and to lock up when it came time to close.

On the same evening the defendant, often referred to in the record as Junior, and his brother Eugene, or Gene, betook themselves to Angel's Lucky Seven—after having first attempted to borrow money from an employee of a nearby plant. After they arrived at the tavern the brothers began to cadge money with which to buy drinks. About closing time Gene kept falling asleep on the bar and the defendant then asked Mr. Thrush if he would take them home.

The Lucky Seven was closed shortly after midnight. From the cash register, Mr. Thrush removed all the weekend receipts, which included a number of ten and twenty dollar bills, and placed them in a money sack. He took the receipts with him and was last seen alive getting into his Rambler station wagon, in which the defendant was then sitting in the front passenger seat and Gene was occupying the seat behind.

The evidence showed it was the invariable custom of Mr. Thrush, upon leaving the tavern, to go directly home, a matter of only a few blocks. However, this evening his pattern was broken, and he never made it home. Neither did he deliver the Hale brothers to their place of abode, a couple of blocks from his own.

About 12:30 a. m., May 6, 1969, the Thrush car was seen proceeding slowly north on Arkansas to 53d Street, many blocks north of where either Thrush or the Hales lived. At 53d the car turned west. Three men occupied the car at that time, two in the front seat and one in the back.

The Hales, both Junior and Gene, next turned up in Thrush's station wagon between 1:00 and 1:30 a. m. at a Knights of Columbus Hall at Andale, Kansas, a small community in Sedgwick County some twenty miles west of Wichita. At this time Thrush was not in his car. The brothers asked to use the restroom and inquired where they might purchase some gas.

About 2:25 a. m. the defendant appeared at a farm house in rural Sedgwick County where he purchased some gasoline for the car from a farm woman. He paid for it with two one-dollar bills.

At approximately 4:30 a. m. the Hale brothers arrived on foot at a truckstop restaurant at the junction of U. S. 54 West and the Cheney road, where they ordered breakfast. They said they had been fishing, that they had broken an axle on their car and they wanted to get to the city for parts. While waiting for breakfast to be prepared they played the music machine, to the tune of

about three dollars, and one of them made a long distance call to Seattle. After paying for their breakfast with a five-dollar bill, one of the Hales offered to buy the owner a steak breakfast, but his offer was declined. They also offered to pay him for taking them to Wichita.

A farmer who lived near Cheney picked the Hales up near the truck stop and took them into Wichita where he let them out near a bus stop. They told their benefactor they had been fishing, had broken an axle on their dad's truck and wanted to catch a bus to get some parts. As they got out of the car a gold Masonic ring, later identified as belonging to Thrush, rolled out from underneath the passenger seat. The defendant claimed the ring as being his.

We next find the brothers being transported by taxi to the Knotty Pine Inn. This was between 8:00 and 8:30. They told the driver they had been driving a truck which broke down and they wanted to be near a highway so they could hitchhike to Holly, Colorado, to get repairs. The two men spent considerable time in the West Street Bar, next to the Knotty Pine, where they engaged in buying beers for themselves and two of their cronies, one having the name of Heavy. They paid for the drinks with ten and twenty dollar bills.

Later that morning all four drove to Salina in Heavy's car, where they continued their drinking spree to the point of intoxication. A Salina taxi driver testified the Hales had several five-dollar bills. Eventually the defendant passed out. When arrested by Salina police that evening he had more than fourteen dollars on his person.

The body of Mr. Thrush was found early in the morning after his disappearance. It was in a ditch some twelve miles west of his home. His ring, his watch, his car and the tavern receipts were missing. According to medical testimony the cause of his death was acute heart failure. The body appeared to have been dragged from the car into the ditch. An examination of the body disclosed a laceration on the ring finger and an injury to the face above the right eyebrow. There was medical evidence that the facial injury was ante-mortem in its origin and had occurred very shortly prior to death. This medical opinion was based on the evidence of swelling and bleeding beneath the skin which indicated that there was circulation going on at the time of the injury.

In addition to what we have already related, there was evidence that the defendant's boots matched the heel impressions found at the scene where the body of the deceased was found. Dirt samples

taken from the boots were compared with earth taken from the scene and were found to have sufficient similar characteristics to have come from the same area. Fingerprints lifted from the Rambler were very similar to those of the defendant, although positive identification could not be made because of the quality of the prints.

Three medical witnesses were called by the defendant and testified the deceased had died a natural death from heart failure. Hale himself did not testify.

The defendant's first item of complaint is that the verdicts are not supported by substantial competent evidence. We are of the opinion this contention cannot be sustained. Although it may be true that direct evidence of guilt is lacking, there is a damning chain of circumstantial evidence extending from the time Mr. Thrush left Angel's Lucky Seven Tavern to the time this defendant was arrested in Salina.

It is well established that a conviction, even of the gravest offense, may be sustained by circumstantial evidence. (*State v. Kennedy*, 124 Kan. 119, 257 Pac. 726.) This court has even said that inferences drawn from admitted or well authenticated facts may be stronger and more convincing than the testimony of witnesses who, albeit unwittingly, may not have been telling the truth. (*State v. Evans*, 115 Kan. 538, 541, 224 Pac. 492.) This declaration accords with the concept, generally held, that circumstantial evidence may be more trustworthy than eyeball testimony. (30 Am. Jur. 2d Evidence, § 1091, pp. 249, 250.)

The defendant argues that evidence was lacking to establish first-degree robbery because there was no showing that Mr. Thrush was alive when relieved of his money, car and other valuables. His argument continues with the assertion that a dead man cannot be placed in fear and, hence, there can be no robbery of a corpse.

An analogous contention is advanced with respect to the charge of first-degree kidnaping, an offense which requires either that the abduction be carried out for the purpose of obtaining ransom or that personal harm be inflicted upon the victim. The defendant maintains that since it was impossible to say that Mr. Thrush received any injury before his death, his abduction, if any there was, could not be said to constitute kidnaping in the first degree.

If the facts were as the defendant claims them to be, the prosecution might find itself in a quandary. However, the state is not impaled on the horns of any such dilemma. The premise on which

Hale bases his argument is false. There is substantial medical evidence, which we have heretofore pointed out, from which the jury might reasonably conclude that Mr. Thrush was alive when his property was taken from him and that he sustained personal injury at that very time.

When considering, on appeal, the sufficiency of circumstantial evidence to sustain a conviction of a crime, the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. (*State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; *State v. Gregory,* 191 Kan. 687, 691, 383 P. 2d 965.) We are compelled to conclude that this test has been met successfully in the case before us. The circustances have already been related and require no repetition. They weave an incriminating and enveloping net, not the weakest part of which is the defendant's sudden and unexplained rise to affluence from his previous penury. (*State v. Jones,* 202 Kan. 31, 45, 446 P. 2d 851.)

We proceed to the instructions. Hale's first complaint is directed against the instruction pertaining to circumstantial evidence. The instruction omits language frequently found in circumstantial evidence cases to the effect that the circumstances must exclude every reasonable hypothesis except that of guilt. (*Horne v. State,* 1 Kan. 42.)

This court has said that the jury must be so instructed. (*State v. Bonomo,* 173 Kan. 675, 250 P. 2d 833.) However, convictions based on circumstantial evidence have also been sustained where that exact language was not employed, but where, in lieu thereof, instructions were given which basically stated the rule. (*State v. Pack,* 106 Kan. 188, 186 Pac. 742; *State v. Adams,* 20 Kan. 311.) We view the instruction submitted in this case as falling within that category.

The trial court is said to have erred in giving the standard instruction on the unexplained possession of recently stolen property. It is alleged the circumstances of this case did not warrant such instruction.

There is no merit in this contention. The defendant and his brother were identified as being in sole possession of the Thrush station wagon at Andale, at which time its owner was nowhere to be seen. A short time later the defendant purchased gas for the car. The car, itself, was found wrecked near Cheney, many miles

from the Thrush home, about the same time that its owner was found dead in a ditch between Wichita and Andale, with his Masonic ring and money missing—along with the car. His ring turned up in Hale's possession a few hours later.

Two additional claims of error require mention. The defendant asserts the court erred to his prejudice in submitting the charge of first-degree murder to the jury. He points out that in the separate trial of Eugene, held subsequent to his own, the trial court struck the murder charge from the information and withdrew it from the jury.

The evidence introduced in the state's case against Gene, who was Junior's co-defendant, is not before us and we are in no position to appraise its sufficiency. Nor is it important here whether the charge of murder against Gene was correctly or incorrectly withdrawn. The instant case is to be judged on its own facts.

The first-degree murder charged by the state in this case was that of felony murder. The state contended that Mr. Thrush was killed while a robbery was being perpetrated, and there was evidence to support that theory. Even though his death was ascribed to an acute heart attack, there was medical testimony that the deceased had sustained personal injury prior to death and that death itself might have been precipitated by emotional stress or excitement. In our opinion there was sufficient evidence to justify submitting the murder charge to the jury. Furthermore, since the jury returned a verdict of not guilty as to this count, we are at a loss to understand how the defendant was prejudiced.

It is finally alleged that the trial court erred in refusing to permit cross-examination of a prosecution witness as to a statement allegedly made by Gene. The incident arose in this way. A Sedgwick County officer, Johnnie Darr by name, testified, without objection, that as part of the booking procedure, Gene gave his address as being 3008 North Arkansas. On cross-examination defense counsel sought to question Darr concerning a statement Gene had given concerning other matters. The record is not clear whether this statement was made at the time he was booked, or subsequently,

The court ruled that Darr could not be cross-examined on Gene's alleged statement, which was to the effect (as shown in Hale's brief) that Thrush was dead when larceny was committed. We believe the court was correct in its ruling. The statement was not only self serving on the part of the declarant but was purely hearsay, so far

as the state and the defendant were concerned. K. S. A. 60-460 provides that evidence of a statement, other than by a witness while testifying, which is offered to prove the truth of the matter stated is hearsay and inadmissible, with certain exceptions not relevant here.

Gene refused to testify at the trial on the ground that his testimony might tend to incriminate him. Such was his constitutional right. Hence he would not have been available for cross-examination by the state, and the exception set forth in 60-460 (*a*) was not applicable.

The defendant suggests that the attempted cross-examination of Mr. Darr was permissible on the theory that the state, on direct examination, had opened up the subject. We think otherwise. Darr's testimony went no further than this: While being booked at the county jail, Gene had given his address. As to this statement, Darr might be cross-examined—but not as to others.

It is widely held that cross-examination must be responsive to the matters gone into on direct examination. (*State v. Roth,* 200 Kan. 677, 681, 438 P. 2d 58.) Any cross-examination of Mr. Darr as to self serving declarations on Gene's part would clearly be impermissible as extending beyond the scope of the direct examination. Cross-examination is not proper when it exceeds the bounds of the direct examination and seeks to set up matters of defense. (*In re Estate of Snyder,* 188 Kan. 46, 50, 360 P. 2d 883.

We find no prejudicial error in the trial court's judgment and the same is affirmed.