No. 46,572

State of Kansas, *Appellee,* v. Paul E. Skinner, *Appellant.*

(503 P. 2d 168)

Opinion filed November 4, 1972.

*Christopher J. Redmond, of* Redmond and Redmond, of Wichita, argued the cause, and *Owen J. Redmond, Jr.,* and *L. Joseph Smith,* of the same firm were with him on the brief for the appellant.

*Reese Jones,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief of the appellee.

The opinion of the court was delivered by

Harman C.: Paul E. Skinner was convicted by a jury of the offense of aggravated robbery. Sentenced, he now appeals.

Appellant was charged with committing the offense jointly with Connie M. Suing. The two were separately tried (see *State v. Suing*, 210 Kan. 363, 502 P. 2d 718.)

Evidence for the prosecution revealed the following:

On November 17, 1970, at about 11:30 p. m. a woman (later identified as Connie M. Suing) entered the Taco Tico No. 1 restaurant on South Seneca street in Wichita. Displaying a handgun she approached a Taco Tico employee and demanded money. The employee commenced handing her one dollar bills from his cash register. She ordered him to give her his "big bills". The employee then produced some five, ten and twenty dollar bills which the woman took. She ran out the door and entered an automobile parked outside the restaurant. This vehicle was a white, older model Chrysler, very dirty, with rust spots on the passenger side and a trailer hitch on the rear. The car bore a green license plate with white numerals and the letters SG. A man seated in the driver's seat drove the vehicle away immediately upon the woman's entrance into it.

The parked vehicle was observed by the Taco Tico employee and also by a married couple whose attention was attracted to the incident by the woman's rapid exit from the restaurant and the employee's cry that he had been robbed. This couple had previously entered the restaurant, had seen the Suing woman enter it as they were leaving, and were preparing to drive from the parking lot in their own vehicle parked near the Chrysler when Suing ran from the restaurant. The husband testified he observed the driver of the white Chrysler and that appellant "looks like" that person. He and his wife followed the Chrysler in their own automobile for a short distance south on Seneca street but lost it.

A description of the Chrysler was promptly given to the Wichita police department and about an hour after the holdup a car matching the description was located in a parking lot at the Gasser Club in Wichita. A license tag check determined this vehicle belonged to appellant. It was a white 1962 Chrysler, dirty, had rust spots on the passenger side, a trailer hitch on the rear bumper and a green license plate with the letters SG on it. Within a few minutes after police observed the car, appellant and Connie M. Suing came from the Gasser Club, entered the vehicle and drove away. Police officers stopped the car, arrested the two and searched appellant's person. He had $134.00 in currency "stuffed" in his left rear pants

pocket—four twenty dollar bills, one ten dollar bill, seven five dollar bills and nine one dollar bills. Appellant had no wallet on his person The amount of money missing from the Taco Tico cash register was $173.74.

Photographs of Connie M. Suing and of the Chrysler automobile were received in evidence.

Appellant testified in his own behalf. On the day in question he had received money from the sale of a business and as a result had $200.00 in cash; that evening he and Connie Suing had been at the Roaring Sixties Club from about 9:00 p.m. to about 11:45 p.m., although Connie did leave the tavern for a while but returned about 11:30; they left to go to appellant's home where he changed shirts, then they went to the Gasser Club; he was arrested in his Chrysler automobile soon after he and Connie left that club; he had previously lost his wallet and had not replaced it; he was not in the vicinity of the Taco Tico No. 1 restaurant that night and did not take Connie Suing there to rob it. He acknowledged that the photographs offered by the prosecution were pictures of his vehicle.

The proprietor of the Roaring Sixties Club testified in appellant's behalf that he saw appellant at his club on the night in question, the last time being about 11:25 or 11:30 p.m.

Appellant's specifications of error will be dealt with chronologically.

During the *voir dire* examination certain questions were asked respecting ownership in the Taco Tico corporation. This inquiry prompted the trial judge to interrupt and to disclose in a conference outside the jury's hearing that he owned a one-third interest in a Taco Tico franchise in Topeka but had no financial interest in the Taco Tico operation in Wichita; he further stated he felt no prejudice as a result of his Topeka ownership interest and did not believe he should disqualify himself as trial judge. Appellant asserts the trial judge indicated he would disqualify himself for sentencing if appellant were found guilty. The record does not sustain that assertion and the record must control.

Appellant argues the judge should have disqualified himself and that prejudice is shown because the maximum sentence possible for a class B felony under K. S. A. 1971 Supp. 21-4501 (*b*) was imposed (fifteen years to life) and this must have resulted from the judge's lack of impartiality by reason of his financial interest in Taco Tico. The contention has no merit.

Appellant relies on authority pertinent to judicial disqualification when a financial interest is present. As to this the law is clear. A judge should disqualify himself in any proceeding in which his impartiality might reasonably be questioned, including instances where he has a financial interest in the subject matter in controversy (see ABA Code of Judicial Conduct, May, 1972, Final Draft, Adopted August, 1972, Canon 3, C. [1] [c]; also, ABA Standards, The Function of the Trial Judge, June, 1972, Tentative Draft, Adopted August, 1972, § 1.7, p. 34).

The foregoing principle, however, is not pertinent to the case at bar for the simple reason the record affirmatively shows the trial judge had no financial interest, direct or indirect, in the business which was victimized. This latter fact was expressly conceded, as it had to be, by appellant's counsel upon oral argument. There was no connection between the Topeka interest owned by the judge and the Wichita operation other than each was a franchisee of the same franchisor, which obviously is insufficient to raise any reasonable question of partiality. To hold otherwise would operate to disqualify every judge who happened to possess property similar to that which had become the subject of predatory activity. Manifestly, the trial judge revealed his interest in the Topeka operation only from extra circumspection in an effort to prevent any misinterpretation possible from surface appearance and nothing in the record suggests impropriety or partiality on his part. The sentence adjudged was within legal limits and was imposed by the trial judge with the knowledge that appellant had had a previous felony conviction.

Appellant asserts the trial court erred in receiving in evidence a photograph of Connie Suing and two photographs of his automobile. The basis of complaint is the exhibits were never shown to be true and accurate portrayals of the subjects depicted. Appellant conceded he and Suing were arrested in his own automobile and that the two photos depicted that automobile. The photos were taken the day after the holdup—the same day as the arrest. The arresting officer testified he saw no alterations in or additions to the automobile from the time he first saw it at the Gasser Club to the time the photos were made. The Taco Tico employee and the married couple identified the pictures as portrayals of the vehicle which they saw the robber enter upon running from the restaurant. Appellant was identified as a man who "looks like" the person who was the driver of the vehicle portrayed in the pictures.

Connie Suing was not present in court but the exhibit which is conceded to be her photograph was shown to various prosecution witnesses. The Taco Tico employee identified the photograph as depicting the female robber, the married couple identified it as portraying the woman they saw running from the restaurant and who entered the white Chrysler, and the arresting officer identified it as depicting the woman present in the white Chrysler when he stopped it. It is immaterial that no witness testified as to the circumstances of the taking of the photos. The photos were not offered to portray testimonially the particular appearance either of Connie Suing or appellant's vehicle on the night in question—that was not an issue. They were offered to link appellant to the robbery at the time of its commission and ample foundation for their admission for that purpose was shown. No further sponsorship was needed.

Appellant makes the bare assertion the prosecution failed to present sufficient evidence to support his conviction. Nothing beyond this simple statement is offered in support and in view of the facts already recited the assertion can only be regarded as frivolous.

Appellant complains the court failed to give an instruction to the jury respecting his defense of alibi. He did serve a notice of alibi and, as already indicated, offered evidence which if believed would have placed him elsewhere than at the scene of the crime at the time of its commission. The record does not reveal any request by appellant for an alibi instruction and further consideration might well end at this point by reason of K. S. A. 1971 Supp. 22-3414 (3) which, after providing that any party may file written requests that the court instruct the jury on the law as set forth in the requests, states that all requested instructions must be filed as a part of the record of the case.

However, appellant asserts he orally requested such an instruction in chambers and upon argument before this court the state concedes this was true. Because of the importance of the issue to the bench and bar we consider it on the merits.

Appellant cites and relies on *State v. Conway*, 55 Kan. 323, 40 Pac. 661, wherein the following appears:

"Where there is testimony that the accused was so far removed from the place of the crime at the time of its commission as to make it impossible that he could have committed it, the court should instruct the jury upon the law of alibi." (Syl. ¶ 1.)

In the opinion the cited authority for this rule is *State v. Johnson*, 40 Kan. 266, 19 Pac. 749. However, the actual holding in *Johnson*, on this issue was limited to the following:

"Where there is testimony tending to sustain the defense of an *alibi*, interposed by one of the defendants, it is proper for the court to instruct the jury as to the law of such defense; but where the defendant is prosecuted with others upon the theory that all conspired together to commit the crime, and there is testimony supporting it, a direction to the jury that if they found that one of the defendants was not actually present when the crime was committed they should acquit him, was properly refused." (Syl. ¶ 3.)

Research reveals that the first syllabus in *Conway* quoted above has been referred to by this court but once—in *State v. McManaman*, 120 Kan. 376, 244 Pac. 225. The holding was merely repeated. However, in that case there was no request for an alibi instruction, the evidence revealed the defendant had two accomplices in the commission of the alleged crime, and the court's ruling was summarized thus:

"Where there is evidence which tends to show that the defendant was not at the place where the larceny of cattle was committed and there is evidence which tends to prove that two other persons were connected with the defendant in the larceny of the cattle, it is not error to fail to instruct the jury concerning the law of alibi where no such instruction is requested." (Syl. ¶ 3.)

Perhaps the reason we have no further precedent on the subject is that in the past trial judges have been giving the alibi instruction upon request. If that be true, and previous records before this court would so indicate, then the winds of change appear to be stirring.

In PIK § 52.19, Criminal, prepared by the Committee on Pattern Instructions of the Kansas District Judges Association and published in 1971 under the sponsorship of the Kansas Judicial Council, the following appears:

"ALIBI
"The Committee recommends that there be no separate instruction on alibi.
"Comment
"Alibi is not an affirmative defense, as in entrapment or insanity; it consists only of evidence showing that the defendant was not present at the time or place of the crime. This evidence should be considered as all other evidence. If an instruction is given, attention is called to the defendant's alibi, which connotes a burden not found in the law."

Further examination of the opinion in *State v. Conway*, supra, reveals concern with that which is expressed in PIK, that is, possible connotation in an alibi instruction that the defense has any burden of proof relative to the defense of alibi. The *Conway* court carefully pointed out that the attempt of the accused to prove an alibi does not shift the burden of proof from the state; further, that it is not necessary the jury believe the proof of alibi before it can

acquit the accused and, if the alibi evidence introduced by the accused is such as to raise a reasonable doubt as to his guilt, he is entitled to an acquittal.

Summing up, the following can be distilled from *Conway:* The function of evidence relating to alibi is not to establish a defense nor to prove anything, but merely to raise a reasonable doubt of the presence of the accused at the scene of the crime.

In *Witt v. State of Indiana,* 205 Ind. 499, 185 N. E. 645, the court in considering whether an instruction on alibi which had been given was erroneous made this comment:

"Strictly speaking *alibi evidence* is merely rebuttal evidence directed to that part of the state's evidence which tends to identify the defendant as the person who committed the alleged crime. And in a sense an *alibi* is adequately covered by a general instruction which declares that the state must prove beyond a reasonable doubt all the essential elements of the offense charged." (p. 503.)

In *Whitaker v. Commonwealth,* 302 S. W. 2d 601 (Ky.), an alibi instruction was not given although the accused produced evidence he was elsewhere than at the scene of the crime at the time of its commission. The court held that an affirmative instruction covering the defense of alibi was not necessary, saying:

"The rule applicable to the instant case 'is to the effect that where the instruction submitting the Commonwealth's theory of the case is couched in such language the ordinary juror can easily understand, and its negative (raised by the usual reasonable doubt instruction) completely and adequately covers the defense of accused, it is not necessary to give an affirmative instruction embodying his theory.'" (p. 603.)

*State v. Garvin,* 44 N. J. 268, 208 A. 2d 402, contains an excellent discussion of the problem. The court stated:

"The subject of alibi has commanded an inordinate amount of judicial consideration. Perhaps the reason is that at one time some courts thought of alibi as a separate defense and charged the jury that the defendant had the burden of proof with respect to it. . . . But it is now perfectly clear in our State that alibi is merely a direct denial of the State's charge; and that being so, it is not apparent why such testimony should be dealt with differently from any other direct denial of the State's allegations.

"Indeed the very discussion of alibi as something apart from a direct denial of the truth of the State's case tends to obscure its role and to suggest a defendant has some special responsibility with respect to it. . . .

"Moreover, so long as alibi is thought to command special treatment, there will be unrewarding questions as to what constitutes an alibi and the sufficiency of evidence to raise the issue. . . .

"It seems to us that all of this is quite unnecessary. There is no need to speak of alibi in such separate terms, and indeed to do so will more likely obscure the case than clarify it. The important thing is to make it plain to

jurors that to convict they must be satisfied upon a consideration of all of the evidence that guilt has been established beyond a reasonable doubt. If a defendant's factual claim is laid beside the State's and the jury understands that a reasonable doubt may arise out of the defense testimony as well as the State's, the jury has the issue in plain, unconfusing terms." (pp. 273-274.)

The court found no error in the trial court's failure to instruct on alibi.

In *State v. Hess,* 9 Ariz. App. 29, 449 P. 2d 46, (review denied) the court dealt with a trial court's refusal to give a requested instruction on the subject of alibi, respecting which this was stated:

"The nature of the 'defense' of alibi is not that of confession and avoidance as are coercion, duress, self-defense and insanity; alibi, if successful, is proven under the aegis of a general denial. . . . It is true that our criminal rules require that a defendant who would assert an alibi must give notice of his intention to do so, listing the witnesses who shall testify to establish the alibi. . . . However, the purpose of this rule is to guard against the wrongful use of alibi evidence and to give the prosecution time and information to investigate the sources of this evidence." (p.33.)

The court went on to hold that error cannot lie in a refusal to charge specifically as to alibi where proper instructions are given on the elements of the crime charged and on reasonable doubt.

This court has always been committed to the rule that error cannot be predicated on the refusal to give specific instructions where those which were given cover and include the substance of those refused (2 Hatcher's Kansas Digest, rev. ed., Criminal Law, § 306; 4 West's Kansas Digest, Criminal Law, § 829).

In the case at bar the trial court gave clear and adequate instructions as to the elements of the crime charged, the presumption of innocence and the burden of proof. The court made it plain to the jury that the burden of proof was on the prosecution to establish guilt beyond a reasonable doubt upon the entire case. Under such circumstances, and in order to avoid any possible misleading of the jury on the all important issue of burden of proof, we think the better practice is not to single out the alibi defense for specific treatment in the instructions. As indicated in PIK, the danger in instructing separately relative to the defense of alibi lies in the almost insurmountable difficulty of avoiding connotation of some burden on the accused to prove the defense. Accordingly we hold that a separate instruction on the defense of alibi is not required where adequate and proper instructions are given on the elements of the crime charged and on the prosecution's burden to prove guilt beyond a reasonable doubt. That which is stated in syllabus

¶ 1 and in the corresponding part of the opinion in *State v. Conway,* supra, is overruled.

Finally, appellant urges error in the trial court's failure to give an instruction on circumstantial evidence. The record reveals a request for such instruction but here again does not show the filing of any written requested instruction in compliance with K. S. A. 1971 Supp. 22-3414 (3). A typical circumstantial evidence instruction includes a definition of circumstantial or indirect evidence, a statement that it is to be considered as any other evidence, and lastly, a statement that the accused should not be found guilty unless the facts and circumstances proved exclude every reasonable theory of innocence (see PIK § 52.16, Criminal). However, it has been held that the cautionary last statement should be given only when the proof of guilt is entirely or substantially indirect (see cases cited 2 Hatcher's Kansas Digest, rev. ed., Criminal Law, § 325; 4 West's Kansas Digest, Criminal Law, § 784). Moreover, in *State v. Logan,* 203 Kan. 864, 457 P. 2d 31, we find the following:

"Appellant also complains the trial court refused to give an instruction to the effect that circumstantial evidence must be so strong as to exclude every reasonable hypothesis except that of guilt. In one instruction the court did define circumstantial evidence as proof of one fact from which an inference of the existence of another fact may reasonably be drawn. Having done this, the court could well have supplemented the instruction as requested. However, in view of other instructions given, we cannot say failure to do so constituted prejudicial error. The jury was instructed as to each essential element of the crime charged, burden of proof, reasonable doubt and upon the necessity that each element of the alleged crime be proven beyond a reasonable doubt before appellant could be found guilty. This burden upon the state before a conviction could be had was reiterated throughout the instructions. The evidence was not of an involved or complex nature and, from both a legal and a practical standpoint, presented simple issues. We cannot see how, under the instructions, the jury could have been misled in its consideration of the evidence, to the prejudice of appellant." (p. 866.)

Here there was substantial direct evidence of appellant's participation in the alleged crime, the details of which need not again be labored, which rendered unnecessary the giving of any instruction on circumstantial evidence. Again, it should be borne in mind the trial court in its instructions explained the meaning of reasonable doubt and made it clear the jury must be convinced beyond reasonable doubt of appellant's guilt before returning a verdict of guilty.

We find nothing to warrant disturbing the judgment and it is affirmed.

APPROVED BY THE COURT.