No. 47,344

STATE OF KANSAS, *Appellee,* v. FRANK WILKINS, *Appellant.*

(523 P. 2d 728)

Opinion filed June 15, 1974.

*Bryson E. Mills,* of Wichita, argued the cause and was on the brief for the appellant.

*Clifford L. Bertholf,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *George Savin,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Frank Wilkins was found guilty by a jury of burglary (K. S. A. 1972 Supp. 21-3715) and theft (K. S. A. 1972 Supp. 21-3701 [a]) and he was committed to the custody of the Director of State Penal Institutions. On appeal he raises four points including the insufficiency of the evidence.

The state's evidence was indirect or circumstantial and defendant's guilt was largely based on possession and use of a stolen shotgun within three hours after the shotgun had been stolen. The testimony of the witnesses fairly established the following facts. The owner of the shotgun, Frederick Ungerer, worked at the GEM store in Wichita. On November 22, 1972, the Winchester 1200 shotgun was hanging on a rack in the cab of the owner's pickup truck which he had driven to work. The pickup was locked and parked in a parking lot near the store. The owner testified the pickup truck was entered by breaking a vent window. He saw the gun at 2:00 p. m. on that day. At 3:45 p. m. he discovered the broken vent window. The gun had been removed from the truck. He had no knowledge of who took the gun.

The GEM store was located on the outskirts of Wichita. A large open field separated the parking lot from railroad tracks. A building was located near the railroad tracks, which was referred to during the trial as the "Metal Fab" building. At 4:49 p. m. a patrolman of the Wichita police department, while on routine patrol, observed the defendant and two others in the field near the railroad tracks. The defendant was seen shooting the gun. When the three individuals saw the patrolman they ran along the railroad tracks to a rock pile. The patrolman called to the three men. One of the men disappeared over the railroad tracks. The other two started walking back toward the police car. The patrolman placed the defendant under arrest for discharging a firearm in the city and questioned the two men about the firearm. After some urging the defendant showed the officer where the gun had been hidden. The officer recovered the gun and ran a check on it. He learned that the gun had been recently reported stolen. On further questioning

defendant advised the officer the gun had been found by his brother in an area near the Metal Fab building. It had recently rained and the area near the building was muddy. A search of that area disclosed no human tracks to support the defendant's story. At the trial the defendant disputed some of this testimony. He denied that he was shooting the gun when the officer discovered him in the field. The other two individuals with him were his brothers and defendant testified it was his younger brother who found the gun and had possession of it.

On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt but whether the evidence was sufficient to form the basis for a reasonable inference of guilt when viewed in a light most favorable to the state. (*State v. Platz*, 214 Kan. 74, Syl. ¶ 1, 519 P. 2d 1097; *State v. Austin*, 209 Kan. 4, Syl. ¶ 2, 495 P. 2d 960.) The patrol officer testified defendant had possession of the stolen gun when the three were first discovered in the open field. The credibility of the witnesses must be left to the jury. Possession by an accused of property recently stolen in a burglary is sufficient to sustain a conviction of burglary and theft where satisfactory explanation for such possession is not given. (*State v. Hardyway*, 205 Kan. 55, Syl. ¶ 1, 468 P. 2d 116; *State v. Oswald*, 197 Kan. 251, 255, 417 P. 2d 261.) The evidence on review in the present case is sufficient to sustain the conviction.

Appellant contends that the trial court committed reversible error in refusing to issue a protective order against the use of a juvenile record of a proposed defense witness, Kenneth Wilkins. Kenneth was a younger brother who was with defendant when defendant was accosted in the field. Kenneth had a juvenile record involving two instances of burglary and theft. The record does not indicate whether Kenneth had been certified to the district court and tried on these charges. We assume not. So the question presented is whether the right to confront and cross-examine witnesses under Section 10, Bill of Rights, Constitution of the State of Kansas and the Sixth Amendment to the Constitution of the United States takes precedence over the statutory provisions against disclosure of juvenile records in the juvenile court. (K. S. A. 38-801 *et seq.*)

At the outset it should be noted the question raised concerns a witness, not the accused. Our statutes which apply to evidence sought to be introduced to impair the credibility of an accused are

more restrictive than those which apply to witnesses generally. See K. S. A. 60-421 and 60-455.

K. S. A. 38-801 in pertinent part provides:

". . . In no case shall any order, judgment or decree of the juvenile court, in any proceedings under the provisions of this act, be deemed or held to import a criminal act on the part of any child; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state. . . ."

Juvenile records and files are subject to confidentiality and are to be protected and controlled by the courts of this state as provided in K. S. A. 38-815. However, this court has permitted the state on cross-examination to go into a defendant's prior juvenile history when the subject is first opened up on direct examination (*State v. Ralls*, 213 Kan. 249, 255, 515 P. 2d 1205) and when the juvenile files are first introduced by defendant (*State v. Fahy*, 201 Kan. 366, 370, 440 P. 2d 566). Appellant cites no authority to support his position urging exclusion of this type of impeachment evidence except for the provisions of our juvenile code.

It should be noted that a rule of exclusion of such evidence would be a double-edged sword. If adopted, a rule of exclusion would have to be operable both when a witness with a juvenile record is called to testify on behalf of the state and when such a witness is called by an accused. In the present case the defendant did not want the credibility of his witness impeached but in the next case if such a witness testifies against a defendant the right of that defendant to test the credibility and truthfulness of the witness by cross-examination might well appear indispensable to a fair trial.

In *State v. Hooks*, 202 Kan. 68, 446 P. 2d 770, it is said:

"The Sixth Amendment to the Constitution of the United States provides that 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' In *Pointer v. Texas*, 380 U. S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065, the Supreme Court held this right is a fundamental right and is made obligatory on the states by the Fourteenth Amendment.

"Similarly, § 10 of the Bill of Rights of the Kansas Constitution secures to the accused in all criminal prosecutions the right 'to meet the witness face to face.' This provision was dealt with by this court in the early case of *State v. Tomblin*, 57 Kan. 841, 48 Pac. 144. . . ." (p. 70.)

We are of the opinion that this state's policy interest in protecting the confidentiality of a juvenile offender's record as expressed in K. S. A. 38-801 *et seq.*, must yield to the right of effective cross-examination to test the credibility of a witness by reason of Section

10, Bill of Rights, Constitution of the State of Kansas and the Sixth Amendment to the Constitution of the United States. This constitutional right of confrontation of witnesses means more than being allowed to confront the witness physically for it includes the right of effective cross-examination where the credibility of a witness can be subjected to exploration to examine the weight to be given to his testimony. See *State v. Montanez*, 215 Kan. 67, 523 P. 2d 410.

This court is not without authority for such a decision. This precise question was decided by a Michigan court in the recent case of *People v. Glover*, 47 Mich. App. 454, 209 N. W. 2d 533 (1973), and on February 27, 1974, the Supreme Court of the United States handed down *Davis v. Alaska*, _____ U. S. _____, 39 L. Ed. 2d 347, 94 S. Ct. 1105. The only factual difference between Davis and our present case is that in *Davis* it was the State of Alaska that moved for a protective order to prevent any reference, in the course of cross-examination, to the juvenile record of a crucial *prosecution* witness. In our case it was the defendant who sought the order. In *Davis* the trial court, relying on provisions of a state statute protecting the anonymity of juvenile offenders, granted the prosecution's motion. The Alaska Supreme Court affirmed. On certiorari, the United States Supreme Court reversed saying:

". . . On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which ' "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Brookhart v. Janis, 384 US 1, 3 [16 L Ed 2d 314, 86 S Ct 1245].' Smith v. Illinois, 390 US 129, 131, 19 L Ed 2d 956, 88 S Ct 748 (1968)." (p. ●.)

The holding of the high court in *Davis* is expressed in the last paragraph of the opinion as follows:

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records. . . ." (p. ●.)

As previously stated we are of the opinion that the rule admitting

such records is a two-edged sword which must cut both ways. If it applies to a prosecution witness as in *Davis* it must also apply to a defense witness as in the present case.

The right to cross-examine the witnesses of the prosecution concerning juvenile records must carry with it a right of the state to cross-examine witnesses for the defense concerning similar records. Accordingly we hold the trial court did not err in refusing to issue the protective order in the present case.

Appellant claims reversible error by reason of the closing argument of the prosecuting attorney. The prosecuting attorney argued, "if Kenneth Wilkins found the gun and Roy Wilkins with [the] *that* defendant at the time Officer Trainer spotted them upon the railroad tracks, why, in heaven's name, didn't Kenneth and Roy come in and testify?" Objection was interposed by defense counsel, the objection was sustained but the jury was not verbally admonished to disregard such statement.

The written instructions to the jury included the following:

"INSTRUCTION No. 12    In a case such as this, the jury should not concern itself with evidence which it may feel should have been presented. Jurors and judges are required to decide cases upon what has been presented rather than to speculate upon what could have or what might have been presented.

"INSTRUCTION No. 18    Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that you believe are not supported by evidence, they should be disregarded."

Instruction No. 12 above speaks directly to the question raised by appellant and assuming, *arguendo,* that the statement of the prosecuting attorney was improper, reversible error cannot be predicated thereon in view of the instructions given by the court. However, we see nothing inherently improper in his comment. In *State v. Potts,* 205 Kan. 47, 468 P. 2d 78, it is held:

"In summing up a case before a jury, counsel may not introduce or comment on facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in the discussion of it in which he may use illustrations and appeal to the jury with all the power and persuasiveness which his learning, skill and experience enable him to use." (Syl. ¶ 7.)

When the theory of the defense is based upon facts within the personal knowledge of a particular person or persons available as witnesses and no attempt to secure their testimony is made the failure to produce available evidence may give rise to an inference that

it would be adverse to the party who could have produced it. Wigmore comments on this principle as follows:

". . . It is plain that the inference is based, not on the bare fact that a particular person is not produced as a witness, but on his nonproduction when it would be natural for him to produce the witness if the facts known by him had been favorable." (2 Wigmore, Evidence, 3d Ed., § 286, p. 166.)

Comment by the prosecution on such an inference was recently considered by this court in *State v. Austin,* supra, where it is said:

". . . [W]e believe no error flowed from the state's argument, or that Austin was denied a fair trial thereby. The applicable rule is set out in 2 Wigmore, Evidence, 3d Ed., § 286, p. 167, where, in discussing the principle that the failure to produce available evidence may give rise to an inference that it would have been adverse to the party who could have produced it, Mr. Wigmore states:

" 'When the *witness is privileged,* and the privilege is *independent of the party's control, the witness' claim of privilege renders the party unable to use* his testimony; but it would seem that the witness should at least have been summoned and asked, for he may waive his privilege. . . .'

"In the instant case the defendant did not see fit to call Mr. Patterson to ascertain whether that gentleman would or would not waive his privilege against self incrimination. Accordingly, we cannot say that the state's argument constituted error." (209 Kan. pp. 6, 7.)

Whether defendant should call his brother to testify was a trial decision the defendant had to make. His failure to have him testify was a calculated risk he has to live with. The law is clear that the comment of the prosecutor was not improper and we believe no error occurred by reason of the prosecutor's closing argument.

The final point of error concerns the refusal of the trial court to give what may be called the "circumstantial evidence" instruction, sometimes referred to as the "reasonable hypothesis" instruction, requiring that the jury be able to exclude every reasonable theory or hypothesis of innocence before finding defendant guilty. The committee on pattern jury instructions of the Kansas District Judges Association restated this circumstantial evidence rule as follows:

"A portion of the evidence in this case is circumstantial or indirect evidence. Indirect evidence consist of facts or circumstances which lead to a reasonable inference of the existence or nonexistence of an element of the crime charged. Indirect evidence is to be considered as any other evidence.

"You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence. (PIK Criminal, 52.16.)

The committee's notes on use recite:

"This instruction should be given wherever evidence other than direct evidence is presented to prove the crime charged or any element thereof.

"The second paragraph should be given only when the proof of guilt is *entirely* or substantially indirect.

"Where the proof of the crime or the proof of the defendant's involvement in the commission of the crime is based substantially on indirect evidence, this instruction should be given."

In our present case the first paragraph of PIK Criminal 52.16 was given. The second paragraph, although suggested, was refused by the court. The proof of appellant's guilt in this case is based almost entirely or substantially on circumstantial or indirect evidence. As early as 1900 in *State v. Andrews*, 62 Kan. 207, 61 Pac. 808, there was engrafted into the law of this state a requirement that a "circumstantial evidence" or "reasonable hypothesis" instruction be given in those cases where the proof of defendant's guilt is *substantially* circumstantial or *entirely* circumstantial. In *Andrews* it was held reversible error to refuse to give an instruction to the effect that, ". . . In order to convict on circumstantial evidence, not only the circumstances must all concur to show that the defendant committed the crime, but they must be inconsistent with any other rational conclusion." (Syl.)

During the seventy-four years which have elapsed since *Andrews* our court has continued either to follow or pay lip service to this requirement. See cases cited in 4 West's Kansas Digest, Criminal Law, § 784 and 2 Hatcher's Kansas Digest, rev. ed., Criminal Law, § 325. Our research discloses few cases in which failure to give the instruction has been held reversible error. See *State v. Miller*, 90 Kan. 230, 133 Pac. 878, and *State v. White*, 211 Kan. 862, Syl. ¶ 3, 508 P. 2d 842. In most if not all other cases in which the failure to give the instruction on circumstantial evidence has been raised no reversible error has been established. For examples see *State v. Gereke*, 74 Kan. 196, 86 Pac. 160, *State v. Logan*, 203 Kan. 864, 866, 457 P. 2d 31, and *State v. Skinner*, 210 Kan. 354, 362, 503 P. 2d 168.

The difficulty in applying such a rule arises from the inability of a court to know when the instruction should be given. What quantum of circumstantial evidence amounts to "substantial" or "almost entirely" evidence of the defendant's guilt?

To complicate such an inquiry we have a considerable body of law which holds that no particular type of relevant evidence is entitled to more weight than any other. In one of our more recent cases on the subject, *State v. Murray*, 200 Kan. 526, 437 P. 2d 816, it is held:

"Even though not prejudicial this court disapproves any instruction by which the trial court attempts to stress the comparative weight or potency of any particular type of evidence." (Syl. ¶ 2.)

Legal scholars have argued the various strengths and weaknesses of circumstantial versus direct evidence. See 1 Wigmore on Evidence, 3 Ed., § 26, pp. 401, 402, where Professor Wigmore states: ". . . The probative effect of one or more pieces of either sort of evidence depends upon considerations too complex. Science can only point out that each class has its special dangers and its special advantages." In a footnote to the above section Mr. Wigmore has collected the arguments by both judges and scholars on the subject. The debate has continued for well over 100 years and we do not propose to enter into this continuing debate.

In our present case the trial court instructed the jury on the burden of proof, presumption of innocence and reasonable doubt as follows:

"INSTRUCTION No. 2 The law places the burden upon the State to prove the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced from all the evidence in the case that he is guilty.

"You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant not guilty. If you have no reasonable doubt as to the truth of any of them, you should find the defendant guilty. A reasonable doubt is such a doubt that will leave a juror's mind in such a condition that one cannot say that he or she has been convinced to a moral certainty of the defendant's guilt.

"A reasonable doubt, if there is one, must arise after a careful consideration of all the evidence and it must arise out of the evidence, or lack of evidence, admitted in the trial of the case."

This instruction appears to have been taken largely from the pattern instructions for Kansas. (PIK Criminal 52.02.) It properly and adequately states the law and provides the jury with a correct standard for the determination of the guilt or innocence of the accused no matter what class of evidence has been offered at the trial.

There has been a general trend in both state and federal courts away from requiring any special instruction on proof of guilt by circumstantial evidence. In 1933 the renowned Circuit Judge Learned Hand speaking for the Second Circuit Court of Appeals in *United States v. Becker*, 62 F. 2d 1007, said:

"The judge failed to charge the jury as to circumstantial evidence, contenting himself with an entirely neutral statement of the opposed contentions of the parties, though he had been asked to say that such evidence was enough only when it foreclosed the hypothesis of innocence. He had with ample elaboration told them that they must be satisfied beyond fair doubt of the defendant's guilt, and that in our judgment was enough, though some courts have held otherwise. [Citations omitted.] The requirement seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial. All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it. All that can be asked is that the importance of the result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt. To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry." (p. 1010.)

The United States Supreme Court in 1954 addressed itself to this question holding that no special circumstantial evidence instruction was required. See *Holland v. United States*, 348 U. S. 121, 99 L. Ed. 150, 75 S. Ct. 127.

The relevant portion of the *Holland* case concerns the accused's conviction for income tax evasion by a method of proof relying wholly on circumstantial evidence. The trial court in *Holland* did not instruct the jury on circumstantial evidence. The accused specified this as error. Speaking for the court, Mr. Justice Clark decides that a proper instruction on the standard of reasonable doubt eliminates the need for an additional instruction on circumstantial evidence and states:

". . . The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circmstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, [citations omitted], but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, [citations omitted].

"Circumstantial evidence in this respect is intrinsically no different from testimonial [that is, direct] evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people

and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." (348 U. S. at 139-40.)

The rule announced by the *Holland* court has been followed consistently by all federal circuit courts of appeal without any express or implied reservations. See, *e. g., Taglianetti v. United States,* 398 F. 2d 558, 568 (1st Cir. 1968); *United States v. Warren,* 453 F. 2d 738, 745 (2d Cir. 1972); *United States v. Evans,* 239 F. Supp. 554, 558 (E. D. Pa. 1965) aff'd. 359 F. 2d 776 (3d Cir. 1966); *United States v. Johnson,* 337 F. 2d 180, 204 (4th Cir. 1964); *Sowers v. United States,* 255 F. 2d 239 (5th Cir. 1958); *Continental Baking Company v. United States,* 281 F. 2d 137, 146 (6th Cir. 1960); *United States v. Atnip,* 374 F. 2d 720, 722 (7th Cir. 1967); *United States v. Francisco,* 410 F. 2d 1283, 1286, 1290 (8th Cir. 1969); *Urban v. United States,* 237 F. 2d 379, 380 (9th Cir. 1956); *United States v. Martine,* 442 F. 2d 1022, 1023 (10th Cir. 1971); *Davis v. United States,* 433 F. 2d 1222, 1226 at n. 5 (D. C. Cir. 1970).

In recent years a growing number of state jurisdictions have adopted the rationale of the federal courts in *Becker* and *Holland,* rejecting the necessity of charging the jury as to the weight of circumstantial evidence. See *H. C. & R. Wolf v. Commonwealth,* 214 Ky. 544, 283 S. W. 385; *State v. Harvill,* 106 Ariz. 386, 476 P. 2d 841; *Murray v. State,* 249 Ark. 887, 462 S. W. 2d 438; *Anderson v. State,* 86 Nev. 829, 477 P. 2d 595; *Allen v. State,* 420 P. 2d 465 (Alaska); and *People v. Bennett,* _____ Colo. _____, 515 P. 2d 466.

In the instant case the jury was properly instructed that if it had a reasonable doubt as to defendant's guilt then it should find him not guilty. The "reasonable doubt" instruction which was used has the same meaning as the "reasonable theory of innocence" instruction which defendant requested. The first speaks to a conviction while the second speaks to an acquittal. If they are not restatements of the same measure of proof then giving both instructions requires the jury to apply two different standards to the evidence in the case, a thing we have said is not proper. If both are meant to express an identical standard of proof required to convict then they are redundant and are likely to confuse the jury.

In *State v. Hale,* 207 Kan. 446, 485 P. 2d 1338, this court says:

"It is well established that a conviction, even of the gravest offense, may be sustained by circumstantial evidence. (*State v. Kennedy,* 124 Kan. 119, 257 Pac. 726.) This court has even said that inferences drawn from admitted or well authenticated facts may be stronger and more convincing than the testimony of witnesses who, albeit unwittingly, may not have been telling the

truth. (*State v. Evans*, 115 Kan. 538, 541, 224 Pac. 492.) This declaration accords with the concept, generally held, that circumstantial evidence may be more trustworthy than eyeball testimony. (30 Am. Jur. 2d Evidence, § 1091, pp. 249, 250.)" (p. 449.)

The probative values of direct and circumstantial evidence are intrinsically similar and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each. We believe that whatever type of evidence is introduced in a criminal trial (whether it be termed direct, indirect, testimonial, circumstantial or a combination) the trier of fact must apply the same test to convict the defendant and if there is a reasonable doubt as to his guilt then the defendant should not be found guilty. This court now feels it is time to discard our former rule requiring a circumstantial evidence instruction to be given.

A proper instruction on "reasonable doubt" as applied to all kinds of evidence gives the jury an appropriate standard upon which to make a determination of guilt or innocence; to instruct further on the probative force of circumstantial evidence is to invite the confusion of semantics; and we disapprove statements to the contrary found in *State v. Skinner*, 210 Kan. 354, 362, 503 P. 2d 168, *State v. Hale*, 207 Kan. 446, 450, 485 P. 2d 1338, and in any other decision of this court contra to our holding in the instant case.

We hold an instruction on circumstantial evidence, which cautions the jury that a defendant should not be found guilty unless the facts and circumstances proved exclude every reasonable theory of innocence or states that the jury cannot convict the defendant on circumstantial evidence unless the circumstances exclude every reasonable hypothesis of his innocence, is unnecessary when a proper instruction on "reasonable doubt" is given; and we overrule *State v. White*, 211 Kan. 862, 508 P. 2d 842, and all other decisions in which this court has required a special instruction on circumstantial evidence.

Accordingly the judgment is affirmed.